IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| AUDIO MPEG, INC., U.S. PHILIPS CORPORATION, ORANGE SA, TDF SAS, and INSTITUT FÜR RUNDFUNKTECHNIK GMBH,<br><br>             Plaintiffs   and Counterclaim Defendants,<br><br>      v.<br><br>HP INC.,<br><br>             Defendant and Counterclaim Plaintiff,<br><br>      v.<br><br>SOCIETÀ ITALIANA PER LO SVILUPPO DELL'ELETTRONICA SPA and SISVEL US,<br><br>             Third-Party Defendants. | 2:15-cv-00073-HCM-RJK |
| AUDIO MPEG, INC., U.S. PHILIPS CORPORATION, TDF SAS, and INSTITUT FÜR RUNDFUNKTECHNIK GMBH,<br><br>             Plaintiffs,<br><br>      v.<br><br>DELL INC.,<br><br>             Defendant. | 2:16-cv-00082-HCM-RJK |

1

## OPINION AND ORDER

This matter is before the Court on Defendant Dell, Inc.'s ("Defendant" or "Dell") Motion to Dismiss for Failure to State a Claim ("the Motion"). Doc. 81. The Court held a hearing to address this matter on May 26, 2016. Doc. 142. After the hearing the parties submitted supplemental briefing and notices of supplemental authorities. Docs. 144, 146, 149, 150. For the reasons stated herein, the Court **DENIES** the Motion.

### I.    BACKGROUND

#### A.  Factual Allegations[1]

This patent infringement action stems from the alleged infringement by Defendant Dell of U.S. Pat. Nos. 5,323,396 ("the '396 patent"), 5,777,992 ("the '992 patent"), and 5,539,829 ("the '829 patent") (collectively, "patents" or "Asserted Patents"). Compl. ¶ 24. These patents claim inventions relating to the MPEG Standards. Compl. ¶ 24. This action arises out of "Defendant's intentional and persistent infringement of patented technologies developed by U.S. Philips Corporation, TDF SAS, and Institut für Rundfunktechnik GmbH (collectively, the "Patent Owners") that enable consumers to enjoy high quality music and other audio on electronic devices." Compl. ¶ 2.

"Defendant's products include Patent Owners' inventions;" therefore, "those products can appeal to consumers who seek devices that incorporate the functionality that the patented technologies provide." Compl. ¶ 2. Plaintiffs allege that "by employing [Patent Owners'] inventions in its products, Defendant has made its devices competitive with products similar to

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

those manufactured by licensees in good standing." Compl. ¶ 2. According to Plaintiffs, Defendant's "competitors have recognized the significant value in the Patent Owners' inventions and have licensed and employed those inventions in millions of consumer devices." Comp. ¶ 2. Defendant, however, "has rejected numerous opportunities to license the patented inventions at issue in this case." Compl. ¶ 3.

The Patent Owners "developed technology that was adopted as the industry standard for audio compression." Compl. ¶ 20. This technology "allows audio files to be compressed and stored using much less space" so that "a user can store thousands of songs in a small portable device rather than needing hundreds of CDs or DVDs." Compl. ¶ 23. Plaintiffs note that the "International Organization for Standardization ("ISO") created the MPEG/Audio Working Group ("MPEG/Audio Group") in 1988 to create a standardized audio coder to be used in conjunction with a planned standardized video coder." Compl. ¶ 20. The Patent Owners participated in the standardization effort, and "the ISO selected their technology as the basis for the audio compression standard." Compl. ¶ 20. According to Plaintiffs, the "work of the MPEG/Audio Group was embodied in two standards (known as ISO 11172-3 and ISO 13818-3) directed to MPEG Audio Layers 1, 2, and 3 technology," which were finalized in 1991. Compl. ¶ 21. These standards "include the well-known 'MP3' technology, which allows audio signals to be compressed and stored using much less storage space than previous technologies." Compl. 22. In order to decode MP3 files – or convert compressed data into an audio signal and play it back – a device must comply with the essential elements of the MPEG Standards. Compl. ¶ 22. Plaintiffs note that the "process of compressing and storing the audio signal is known as 'encoding.'" Compl. ¶ 22.

Plaintiffs describe the '396 patent, which expired on June 21, 2011, noting that "Claim 26 of the '396 Patent claims a formula for calculating the number of information packets in one frame, and it claims the ability to decode content that is structured according to the formula." Compl. ¶ 29. Because this formula is essential to the standard, claim Plaintiffs, "any encoded audio file that complies with the MPEG Standards must utilize an arrangement of packets per frame that complies with the formula. Accordingly, products capable of decoding an audio signal that has been encoded in compliance with the MPEG Standards (e.g., an MP3 file) necessarily infringe the '396 Patent." Compl. ¶¶ 26, 29.

Plaintiffs similarly describe the '992 patent, which expired on June 21, 2011. Compl.¶ 30. Plaintiffs allege that "products capable of decoding an audio signal that has been encoded in compliance with the MPEG Standards (e.g., an MP3 file) necessarily infringe the '992 Patent." Compl. ¶¶ 32, 34, 35.

The '829 patent expired on July 23, 2013. Compl. ¶ 36. It "claims an invention known as an 'intensity stereo.'" Compl. ¶ 38. Because the "elements of [claim 19 of the '829 patent] are essential to the MPEG Standards, which require the ability to decode audio signals encoded in 'intensity stereo' mode," "products capable of decoding an audio signal that has been encoded in compliance with MPEG Standards (e.g., MP3 files) necessarily infringe the '829 Patent." Compl. ¶ 39.

Plaintiffs also detail Audio MPEG's licensing program, noting that to "date, more than 1,000 manufacturers and sellers of MPEG Audio-enabled products have taken the license offered by the Licensing Companies, including major players in the industry such as Sony, Apple, Lenovo, Samsung, Cisco-Linksys, LG, Panasonic, Sharp, and Bose." Compl. ¶ 43.

Plaintiffs claim that Defendant "advertises, manufactures and/or sells products that contain unlicensed software that complies with the MPEG Standards (the "MPEG Audio Products")." Compl. ¶ 44. These products "include, but are not limited to, Dell computers and electronic devices containing Cyberlink PowerDVD (such as Latitude D530, Latitude D630, Latitude D830, and Dell Precision M6300) or Roxio Creator (such as Latitude D630)." Compl. ¶ 44. Plaintiffs aver that "Audio MPEG notified Defendant that its products infringed the Patent Owners' patents no later than July 1, 2004," but "Defendant has never taken a license to any of the Asserted Patents." Compl. ¶ 46; see also Compl. ¶¶ 51, 60, 69. Plaintiffs also claim Defendant indirectly infringed the patents "by inducing infringement by others, such as original equipment manufacturers ("OEMs"), other manufacturers, importers, resellers, customers, and/or end users, in violation of 35 U.S.C. § 271(b)" and "by contributing to the infringement by others," in violation of 35 U.S.C § 271(c)." Compl. ¶¶ 52, 53, 61, 62, 70, 71.

Plaintiffs seek "damages for past use of the technologies," as well as "enhanced damages and an award of their fees and costs," as they allege that "Defendant's infringing conduct constitutes, among other things, intentional infringement and disregard of patent rights." Compl. ¶ 3; Compl. at 20. Plaintiffs also seek a declaration that "Defendant has infringed, actively induced infringement, and/or committed acts of contributory infringement with respect to the claims of the '396 patent, the '992 patent, and/or the '829 patent." Compl. at 20. Plaintiffs additionally seek a declaration that Defendant's infringement was deliberate and/or willful. Compl. at 20.

**B. Procedural Background**

Plaintiffs filed this case in the Alexandria Division of the Eastern District of Virginia on December 21, 2015. See Doc. 1, Civil Action No. 2:16cv82. On February 22, 2016, Judge

Trenga transferred the case to the "Norfolk Division to be consolidated with Civil Action No. 2:15cv73 for the purpose of pretrial proceedings and such other proceedings as the Court may determine to be appropriate." Doc. 73. Defendant filed the instant Motion on March 7, 2016, Doc. 81, and Plaintiffs responded on March 31, 2016, Doc. 89. Defendant submitted its reply on April 14, 2016. Doc. 93. The parties submitted supplemental authorities after briefing had concluded but before the Court held a hearing on this matter. See Docs. 131, 137, 138. The Court held a hearing on May 26, 2016. Prior to the May 26, 2016 hearing, Plaintiffs and Defendant HP, Inc. advised the Court that they had settled. After the hearing, Plaintiffs and Defendant Dell submitted supplemental briefs concerning the Federal Circuit's recent decisions in Enfish, LLC v. Microsoft Corp., 2016 WL 2756255 (Fed. Cir. May 12, 2016) and In re TLI Communications, LLC Patent Litigation, 2016 WL 2865693 (Fed. Cir. May 17, 2016). Docs. 144, 146. Additionally, both parties submitted notices of supplemental authority on June 13, 2016 and June 14, 2016. Docs. 149, 150.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). A complaint

6

establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

Previously, courts assessing a complaint alleging patent infringement relied on Federal Rule of Civil Procedure 84, which provided that Form 18 in the Rules Appendix sufficed for a patent infringement complaint. Fed. R. Civ. P. 84 (abrogated, eff. Dec. 1, 2015); see also In re Bill of Lading Transmission and Processing Sys. Patent Litigation, 681 F.3d 1323, 1333–34 (Fed. Cir. 2012) (noting that the Twombly standard "address[ed] the civil pleading standards in a variety of civil contexts" but did not "address the sufficiency of a complaint alleging patent

7

infringement . . ."). However, recent amendments to the Federal Rules of Civil Procedure abrogated Rule 84. Fed. R. Civ. P. 84 (abrogated, eff. Dec. 1, 2015). Although the Advisory Committee noted that the "abrogation of Rule 84 does not alter existing pleading standards or otherwise change the requirements of Civil Rule 8," Fed. R. Civ. P. 84 Advisory Committee's 2015 Amendment Note, the Court agree with Plaintiffs that "[a]t most, the amendments clarify that patent infringement suits are subject to the pleading standard of Twombly." Doc. 89 at 8–9; but see Hologram USA, Inc. v. Pulse Evolution Corporation, No. 2:14cv772, 2016 WL 199417, at *2 n.1 (noting that since the abrogation "does not alter existing pleading standards," the court "refers to previously existing standards in ruling upon the instant Motion"). Therefore, the Court will analyze the Complaint under the pleading standard articulated above.

## III.   ANALYSIS

Dell claims that the Asserted Patents claim ineligible subject matter, that the Asserted Patents are invalid on grounds of indefiniteness under 35 U.S.C. § 112 ¶¶ 2 and 6, and that the Complaint is deficient under the Amended Federal Rules of Civil Procedure. Doc. 82 at 1–2.

### A. Ineligible Subject Matter

Under 35 U.S.C § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore . . ." 35 U.S.C. § 101. One cannot obtain a patent for "laws of nature, natural phenomena, and abstract ideas." E.g., Internet Patents Corp. v. Active Network, Inc., 790 F.3d 1343, 1345 (Fed. Cir. 2015) (citing Diamond v. Chakrabarty, 447 U.S. 303, 309 (1980)). Courts employ "a two-step methodology for determining patent-eligible subject matter." Internet Patents Corp., 790 F.3d at 1346. Courts first determine "whether the claims at issue are directed to one of those patent-ineligible concepts." Id. (quoting Alice Corp. v. CLS

Bank International, 134 S. Ct. 2347, 2355 (2014)) (internal quotations omitted). "If so, the court then considers the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Internet Patents Corp., 790 F.3d at 1346 (quoting Alice, 134 S. Ct. at 2355 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1297–98 (2012))) (internal quotations omitted). The second step represents a "search for an 'inventive concept' – i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Alice, 134 S. Ct. at 2355 (quoting Mayo, 132 S. Ct. at 1294).

Although "[l]aws of nature, natural phenomena, and abstract ideas are the basic tools of scientific and technological work" and therefore do not represent patent-eligible concepts, the Supreme Court has stressed that "an invention is not rendered ineligible for patent simply because it involves an abstract concept." Alice, 134 S. Ct. at 2354. Indeed, applications "of such concepts to a new and useful end . . . remain eligible for patent protection," id. (quoting Gottschalk v. Benson, 409 U.S. 63, 67 (1972)) (internal quotations omitted), and "an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." Diamond v. Diehr, 450 U.S. 175, 187 (1981). However, "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." Digitech Image Technologies, LLC v. Electronics for Imaging, Inc., 758 F.3d 1344, 1351 (Fed. Cir. 2014).

The Federal Circuit recently clarified that not "all improvements in computer-related technology are inherently abstract and, therefore, must be considered at step two." Enfish, 2016 WL 2756255, at *4. The Federal Circuit noted that "some improvements in computer-related

technology when appropriately claimed are undoubtedly not abstract, such as a chip architecture, an LED display, and the like." Id. The Federal Circuit stressed that "[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can, and sometimes the improvements can be accomplished through either route." Id. Thus, the Federal Circuit declined to "conclude that all claims directed to improvements in computer-related technology, including those directed to software, are abstract." Id. In Enfish, the Federal Circuit considered patent claims that were "specifically directed to a *self-referential* table for a computer database." Id. at *6. The Federal Circuit found that "the invention's ability to run on a general-purpose computer [does not] doom[] the claims." Id. at *7.

Conversely, in TLI, the Federal Circuit found that "a patent relating to a method and system for taking, transmitting, and organizing digital images" claimed "no more than the abstract idea of classifying and storing digital images in an organized manner." 2016 WL 2865693, at *1. Unlike the claims in Enfish, the claims in TLI were "not directed to a specific improvement to computer functionality. Rather, they are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." Id. at *3.

Hence, it is important to "distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more." Alice, 134 S. Ct. at 2354 (quoting Mayo, 132 S. Ct. at 1303) (internal quotations omitted).

Dell argues that the Asserted Patents are directed to patent-ineligible concepts. Doc. 82 at 9. Dell maintains that "the Asserted Patents, which are not process claims, do not fit in any of the four statutorily eligible categories" of process, machine, manufacture, or composition of

10

matter. Id. Dell specifies that the "Asserted Patents claim only 'signals' that are 'encoded in accordance with a given encoding process,'" and that "signals" "are not tangible or physical and are ineligible subject matter for patenting." Id. at 9–10. What this argument fails to account for, however, is that § 101 provides not just for a "process, machine, manufacture, or composition of matter" but also for "any new and useful improvement thereof." 35 U.S.C. § 101. Indeed, Plaintiffs claim that "the claims of the Asserted Patents are directed to an improvement in computer functionality itself." Doc. 144 at 2.

Next, Dell argues that the patent claims do not improve the computer itself but rather consists of an abstract idea. Doc. 82 at 11 (citing Digitech, 758 at 1350). Dell argues that "the Asserted Patents claim only well-established abstract concepts of receiving and outputting information in a specified format." Doc. 82 at 12. Dell further argues that "mathematical formulas, such as the formula in the '396 and '992 patents for computing the number of information packets in a frame, are abstract ideas." Id. at 13.

Plaintiffs counter that "at Dell's level of generalization, every patent covers only abstract ideas." Doc. 89 at 10. Audio MPEG avers that "contrary to Dell's characterization, the claims do not broadly cover the general idea of 'receiving and outputting information in a specified format.' Rather, the inventors claim a receiver/decoder configured to use one particular format, and the format itself was invented by the inventors to improve the function of the device." Doc. 89 at 11. The Asserted Patents "seek patent protection for a device which incorporates the format developed by the inventors into a particular device which operates more flexibly and efficiently than the prior art." Id. at 12. According to Plaintiffs, the Asserted Patents represent "inventions that use computers to solve problems arising in the field of computer technology." Id. at 14.

Here, as in <u>Enfish</u>, 2016 WL 2756255, at *7, the invention's ability to run on a general-purpose computer does not doom the claims. Indeed, the claims at issue here undoubtedly make computers more efficient. <u>See</u> Doc. 144 at 7. They solve a problem that the MPEG Audio standards-setting organization identified. <u>Id.</u> at 6. They use "a particular frame format ('396, '992) or intensity stereo coding ('829) to make the audio processing of Dell computers far more efficient." Doc. 144 at 7. The claims are "directed to specific equipment that encodes and decodes digital audio in a new way, using a specific format that is more efficient and flexible than previous methods to solve an existing problem." <u>Id.</u> at 7. Unlike the claims in <u>TLI</u>, 2016 WL 2865693, at *2, which dealt with a way to organize images – something humans can accomplish without a computer – the claims here "encode[] and decode[] a wide-band signal in a manner that takes into account the hearing capabilities of the human ear at different frequencies; by coding the most important frequencies as accurately as possible, and coding less critical frequencies less precisely, a realistic replica of the original signal can be reproduced with the minimal amount of data." <u>Id.</u> at 6 (citing Compl. Ex. C ('829 Patent) at 2:47-57; 3:39-41)). The claims thus resemble those at issue in <u>Enfish</u>, 2016 WL 276255. Plaintiffs are not seeking to patent a mathematical formula or the general idea of receiving and outputting information. Thus, the Asserted Patents do not claim an abstract idea. Hence, the patents claim eligible subject matter under 35 U.S.C. § 101. Because the Asserted Patents are directed to patent-eligible concepts, there is no need for the Court to address the second step of <u>Alice</u>, 134 S.Ct. at 2355. <u>See, e.g.</u>, <u>Enfish</u>, 2016 WL 2756255, at *8.

Thus, the Court **DENIES** Dell's Motion on this ground.

## B. Indefiniteness

Whether a patent is invalid represents a legal question. Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1331 (Fed. Cir. 2010). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014). "'Because a patent is presumed to be valid, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence.'" Enzo Biochem, 599 F.3d at 1331 (quoting Young v. Lumenis, Inc., 492 F.3d 1336, 1344 (Fed. Cir. 2007)).

It is not the Court's "function to rewrite claims to preserve their validity." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1349 (Fed Cir. 2002) (citing Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999)). Courts have found claims indefinite and thus invalid if they cannot discern the scope of a truncated limitation, for example. See id. at 1348–49. Additionally, a court may not adopt "a completely subjective construction of" a claim term in order to find it valid. See Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1350–51 (Fed. Cir. 2005) (abrogated on other grounds, Nautilus, 134 S. Ct. 2120). Thus, if the parties offer no objective definitions of a disputed term, the term is indefinite. See id. Additionally, "when faced with a purely subjective phrase . . . a court must determine whether the patent's specification supplies some standard for measuring the scope of the phrase." Id. at 1351.

Dell notes that, "[a]s a question of law, indefiniteness can be ruled on in a motion to dismiss." Doc. 82 at 15. Dell argues that "[a] ruling on the indefiniteness issues is particularly appropriate at the pleadings stage in this case," as the '396 and the '992 patents "include the undefined term of degree 'substantially equal to.'" Id. at 16. Dell also claims that "the '992 and

'829 patents include means-plus-function limitations without corresponding structure" and are therefore indefinite. Id. Plaintiffs argue that "Dell's argument is premature because courts have consistently held that analysis of whether a claim is indefinite requires claim construction, a process the parties have not even begun." Doc. 89 at 16.

### i.  *Substantially Equal*

Dell first notes that "the '396 and '992 patents include the limitation that 'the average frame rate of the encoded digital signal is ***substantially equal*** to $F_s/n_s$.'" Doc. 82 at 16 (quoting '396 patent cl. 26; '992 patent cl. 1), where "$n_s$ is the number of samples of the wideband digital signal whose corresponding information, which belongs to the second digital signal, is included in one frame of the second digital signal," '396 patent at 2:34–37; '992 patent at 2:32–34, and $F_s$ is "an arbitrary sample frequency," '396 patent at 2:49–51; '992 patent at 2:42–44. Dell further alleges that the patents' specifications do not provide a standard for measuring the scope of "substantially equal." Doc. 82 at 17. Indeed, "[t]he substantially equal to frame rate could be on tenth times $F_s/n_s$, on times $F_s/n_s$, two times $F_s/n_s$, or 10 times $F_s/n_s$." Doc. 82 at 17. According to Dell, a "person of ordinary skill in the art cannot determine the boundaries of this limitation from the patent claims or the specification." Id. at 17–18.

Plaintiffs maintain that it would be inappropriate to dismiss the Complaint on this ground prior to claim construction. Doc. 89 at 16–20. Plus, Plaintiffs argue that the specification provides the needed limitation to this term. Doc. 89 at 20. Plaintiffs allege that "one of skill in the art would understand how close these quantities should be in any particular circumstance, in light of '[t]he purpose of dividing the frames' into information packets in the way described in the patent so that 'the average frame rate of the encoded digital signal received is now such that

the duration of a frame in the digital signal corresponds to the duration occupied by $n_s$ samples of the wide-band signal." Doc. 89 at 19–20 (quoting '992 patent at 2:42–47).

<em>ii.    Means-Plus-Function Terms</em>

Dell also argues that claim 1 of the '992 patent and claim 19 of the '829 patent represent means-plus-function claims  because they use the word "means" and that such claims are indefinite because the patents' specifications do not identify corresponding structure. Doc. 82 at 18.

"Means-plus-function limitations permit a patentee to claim an element of her invention in terms of the element's function, without in the claim itself reciting corresponding structure." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1363-64 (Fed. Cir. 2013). Such claims are governed by 35 U.S.C. § 112(f), which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112(f) (formerly 35 U.S.C. § 112 ¶ 6).

When presented with a request to invoke §112(f), the court must first determine if the section applies. "Means-plus-function claiming applies only to purely functional limitations that do not provide the structure that performs the recited function." Phillips v. AWH Corp., 415 F.3d 1303, 1311 (Fed. Cir. 2005) (citing Watts v. XL Sys., Inc., 232 F.3d 877, 880–81 (Fed. Cir. 2000)). There is a rebuttable presumption that § 112(f) applies "[i]f the word 'means' appears in a claim element in association with a function;" that "presumption collapses, however, if the claim itself recites sufficient structure, material, or acts to perform the claimed function." Callicrate v. Wadsworth Mfg., Inc., 427 F.3d 1361, 1368 (Fed. Cir. 2005). Conversely, a claim

term that does not use "means" triggers a rebuttable presumption that § 112(f) does not apply. See DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1023 (Fed. Cir. 2006).

"Construction of a means-plus-function limitation includes two steps. 'First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs the function.'" Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (quoting Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006)).

A structure disclosed in the specification is a "corresponding structure" if the specification or prosecution history "clearly links or associates that structure to the function recited in the claim." Noah Sys., Inc., 675 F.3d at 1311. Such disclosure must be adequate; thus, a "means-plus-function clause is indefinite if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." Id. at 1312.

In cases involving a computer implemented means-plus-function limitation, the specification must disclose an algorithm for performing the claimed function that is more than simply a general purpose computer or microprocessor. Id.; see also Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech., 521 F.3d 1328, 1333 (Fed. Cir. 2008). The algorithm may be expressed "in any understandable terms," including mathematical formulas, prose, or as a flowchart, as well as "in any other manner that provides sufficient structure." Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Plaintiffs claim that "the structures corresponding to the means element in the receiver/decoder claimed in claim 1 of the '992 Patent, and in claim 19 of the '829 Patent, are fully disclosed and described to one of skill in the art throughout the patent specification,

16

including, among other places, in Figures 4 and 12 of the '992 and '829 Patents, and in the section of the specifications of the '992 and '829 Patents entitled 'The Receiver.'" Doc. 89 at 20–21.

Although some courts have dismissed claims as indefinite at the motion to dismiss stage, see In re TLI Commc'ns LLC Patent Litigation, 87 F. Supp. 3d 773, 789 (E.D. Va. 2015), the Court **FINDS** that the more prudent approach is to address indefiniteness either during or after the Markman hearing. Indeed, even though this Court in In re TLI Commc'ns dismissed claims as indefinite on a Rule 12(b)(6) motion, the parties had already "fully briefed their positions on the disputed claim terms pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996)." 87 F. Supp. at 782. Additionally, the Court had heard "[e]xtensive oral argument." Id.

Here, in contrast, the Court has not yet received Markman briefing. It would be inappropriate at this stage to attempt to construe either the term "substantially equal to" or the allegedly means-plus-function terms. Therefore, the Court **DENIES** the Motion on this ground.

## C.  Amended Federal Rules of Civil Procedure

Dell argues that the Complaint fails to allege direct infringement, indirect infringement – particularly inducement and contributory infringement – and willful infringement. Doc. 82 at 20–29. In contrast, Plaintiffs assert that the "20-page Complaint sets out detailed infringement allegations, going far further than Form 18" or generally alleging infringement. Doc. 89 at 21. Plaintiffs claim that "Dell's logic amounts to an attempt to transform the elimination of a pleading Form into a requirement that patent complaints include claim constructions, claim charts, and infringement contentions." Id.

*i.*     *Direct infringement*

Dell argues that the Complaint's allegations that "Dell's products are 'capable' of infringement or have 'capabilities of the MPEG Standards'" are "simply not enough to raise a plausible claim of infringement." Doc. 82 at 22. Dell stresses that "Plaintiffs do not even plead that the accused Cyberlink and Roxio Creator software packages operate and function in the same manner." Id. (citing Compl. ¶¶ 44, 51, 60, 69). It states that "the MPEG Standard does not include sufficient detail to establish that the identified claims of the '992 and '829 patents are infringed." Id. at 24. It also claims that the Complaint "neither identifies sections of the MPEG Standards that provides structures for [the] means-plus-function claims nor attributes of the accused Dell products that provide the necessary structures." Id. at 25.

However, as Plaintiffs note, "[t]he Federal Circuit has held that 'a district court may rely on an industry standard in analyzing infringement.'" Doc. 89 at 22 (quoting Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1327 (Fed. Cir. 2010)). Plaintiffs detail how the Complaint states plausible allegations of direct infringement. Id. at 22. The "Complaint alleges that any device that complies with the MPEG Standards – such as Dell's devices – necessarily infringes each of the Asserted Patents." Id. (citing Compl. ¶¶ 25, 29, 32, 34–35, 39). Additionally, "the Complaint specifically identifies at least one claim of each of the Asserted Patents that covers technology essential to the MPEG Standards." Id. (citing Compl. ¶¶ 29, 32, 34–35, 39). Additionally, "the Complaint alleges that certain Dell computers contained unlicensed software that complied with the MPEG Standards." Id. (citing Compl. ¶ 44). And, "the Complaint alleges that '[b]ecause the [Dell] MPEG Audio Products comply with the MPEG Audio Standards, they infringe at least the claims referred to above the Asserted Patents," which represents a valid theory of infringement. Id. at 23 (citing Compl. ¶ 45); see also Fujitsu, 620 F.3d at 1327.

The Court **FINDS** that the Complaint adequately alleges direct infringement by stating that all products "that are capable of decoding an audio signal that has been encoded in compliance with the MPEG Standards necessarily infringe the Asserted Patents" and by alleging that "Defendant advertises, manufacturers and/or sells products that contain unlicensed software that complies with the MPEG Standards." Compl. ¶ 44.

### ii.    Indirect infringement

Dell additionally claims that the "Complaint's allegations of indirect infringement – both induced infringement and contributory infringement – are deficient and should be dismissed." Id. at 25. To plausibly state a claim for inducement, the Complaint should allege direct infringement and that "the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp., 420 F.3d 1369, 1378 (Fed. Cir. 2005). To plausibly state a claim for contributory infringement, the Complaint should allege "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." Fujitsu, 620 F.3d at 1326.

Dell alleges that "the Complaint is deficient for failing to show direct infringement, specific intent for induced infringement, and a component provided by Dell with no substantial non-infringing uses." Doc. 82 at 26. Indeed, "[w]ithout a sufficient showing of direct infringement, Plaintiffs cannot plead either induced or contributory infringement." Id. According to Dell, "there is nothing improper about Dell encouraging the use of its computer products, and the Complaint does not include any allegations that Dell specifically promoted or encouraged use of the allegedly patented 'capabilities.'" Id. at 27. Additionally, Dell notes that

"[a]lthough the Complaint alleges that Dell provided 'an important component,' Compl. ¶¶ 53, 62, 71, that component is not identified in the Complaint." Id.

Plaintiffs show that they plausibly have alleged that Dell induced infringement. Doc. 89 at 26. The "Complaint specifically alleges that Dell's acts of inducement include 'Dell's promotions on its websites and marketing materials for Defendant's infringing products and their MPEG Audio, MP2, or MP3 capabilities.'" Id. (quoting Compl. ¶ 52). As Plaintiffs note, these allegations are not implausible: "computer manufacturers like Dell routinely touted the multimedia capabilities of their computers, including the abilities to download, store, and play DVDs and MP3s. That is sufficient to establish 'specific intent.'" Id.

Plaintiffs also show that they plausibly have alleged contributory infringement by alleging that Dell "supplied, sold, and/or offered to sell in the United States components providing the capabilities required by the MPEG Standards, including but not limited to software such as Cyberlink PowerDVD and Roxio Creator, for use with computers and electronic devices . . ." Id. at 27 (quoting Compl. ¶ 53).

The Court **FINDS** that the Complaint adequately alleges indirect infringement by describing Dell's continued instruction and/or encouragement of original equipment manufacturers, "manufacturers, importers, resellers, customers, and/or end user customers to manufacture, offer for sale, sell, import, and/or use Defendant's products incorporating capabilities required by at least one of the MPEG Standards, which include but are not limited to Dell computers and electronic devices containing Cyberlink PowerDVD (such as Latitude D530, Latitude D630, Latitude D830, and Dell Precision M6300) or Roxio Creator (such as Latitude D630)." Compl. ¶¶ 52, 61, 70. Furthermore, the Court **FINDS** that the Complaint plausibly alleges contributory infringement by alleging that Dell "supplied, sold, and/or offered to sell in

the United States components providing the capabilities required by the MPEG Standards, including but not limited to software such as Cyberlink PowerDVD and Roxio Creator, for use with computers and electronic devices, including but not limited to Dell computers and electronic devices." Compl. ¶¶ 53, 62, 71. Hence, the Court **DENIES** the Motion on this ground.

### iii. *Willfulness*

The parties dispute the proper standard to apply to determine whether the Complaint adequately alleges willfulness. Dell cites to In re Seagate Technology, LLC, which held that "to establish willful infringement a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and that "this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." 497 F.3d 1360, 1371 (Fed. Cir. 2007). Plaintiffs, however, rely on Virginia Innovation Sciences, Inc. v. Samsung Electronics Co., Ltd., which noted that, "in order to plead willful infringement, a plaintiff need only 'allege (1) infringement of the patent-in-suit; and (2) pre-filing 'knowledge' of the patent-in-suit by the defendant.'" 983 F. Supp. 2d 700, 708 (E.D. Va. 2013) (quoting Mitutoyo Corp v. Central Purchasing, LLC, 499 F.3d 1284, 1290 (Fed. Cir. 2007)).

After briefing on this matter concluded, Plaintiffs notified the Court of the Supreme Court's recent decision in Halo Electronics, Inc. v. Pulse Electronics, Inc., No. 14-1513, 2016 WL 3221515, -- S. Ct. -- (June 13, 2016). In Halo Electronics, the Supreme Court held that the test announced in Seagate is inconsistent with 35 U.S.C. § 284. Id. at *3. The Court noted that the "principal problem with Seagate's two-part test is that it requires a finding of objective

21

recklessness in every case before district courts may award enhanced damages." Id. at *8. The Court continued, "[s]uch a threshold requirement excludes from discretionary punishment many of the most culpable offenders, such as the 'wanton and malicious pirate' who intentionally infringes another's patent – with no doubts about its validity or any notion of a defense – for no purpose other than to steal the patentee's business." Id. In overturning the Federal Circuit's decision in Seagate, 497 F.3d 1360, the Supreme Court held that the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." Id.

Dell claims that the Complaint contains merely a "boilerplate conclusion" concerning willfulness. Id. at 28. Dell states that actually, "the Complaint alleges facts that, if true, demonstrate that Dell could have reasonably concluded that it was not infringing." Doc. 29. Dell claims that "[t]hese facts include that Plaintiffs have known since 2004 that Dell was offering for sale products with the functionality that they now accuse of infringement. Compl. ¶ 46. But Plaintiffs did nothing about it. They did not file this lawsuit until 11 years later. Plaintiffs cannot sit on their hands for 11 years, put Dell and other similarly situated computer manufactures at rest, and then cry 'willful infringement.'" Doc. 82 at 29.

Plaintiffs counter that the Complaint adequately alleges willful infringement – even under the heightened standard Dell alleges applies – as the "Complaint alleges that there was an 'objectively high likelihood that [Dell] was infringing' each Asserted Patent, and that the 'risk of infringement was obvious such that, even if Defendant did not know of the risk of infringement, it should have known of the risk.'" Doc. 89 at 29 (citing Compl. ¶¶ 54, 63, 72).

The Court **FINDS** that the Complaint adequately alleges willfulness. As discussed above, the Complaint plausibly alleges infringement, and it also alleges that Dell "had actual

knowledge" of the patents no later than 2004. Compl. ¶¶ 54, 63, 72. The Court **FINDS** these allegations plainly sufficient to allege willfulness under Iqbal and Twombly.

Thus, the Court **FINDS** that Plaintiffs' Complaint contains sufficient allegations which, if accepted as true, allow one to conclude that Dell infringed Plaintiffs' patents. Taking the allegations in the Complaint as true, the Court could infer more than the mere possibility of misconduct. Thus, the Court **DENIES** the Motion on this ground.

## IV.    CONCLUSION

For the reasons listed above, the Court **DENIES** this Motion, Doc. 81. The Court **FINDS** that the Asserted Patents claim eligible subject matter under 35 U.S.C. § 101, that Dell's claims of indefiniteness are premature, and that the Complaint adequately alleges direct infringement, indirect infringement, and willfulness.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge

_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
June 27, 2016