IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AUDIO MPEG, INC., et al.,

    Plaintiffs,

v.                                             Civil Action No. 2:15cv73

DELL, INC., et al.,

    Defendants.

## OPINION & ORDER

A hearing on Plaintiffs' Motion to Disqualify Winston & Strawn LLP ("Motion to Disqualify"), Doc. 233, and Plaintiffs and Third Party Defendant's Motion for Protective Order to Adjourn the August 24, 2016 Deposition of Aleks Mehrle ("Motion for Protective Order"), Doc. 223, was conducted on September 7, 2016. At the conclusion of the hearing, the Court **GRANTED** the Motion to Disqualify, Doc. 233, and **ORDERED** Winston & Strawn LLP ("W&S") disqualified from representing Defendant Dell ("Dell") effective September 7, 2016. The Court now supplements its ruling with this Opinion and Order and **DENIES** the Motion for Protective Order, Doc. 223, as **MOOT**.

### I.    PROCEDURAL HISTORY[1]

This is a patent case involving the alleged infringement of the MPEG Standards, including U.S. Patent Nos. 5,777,992; 5,323,396; and 5,539,829. Compl. ¶¶ 4, 24. The patented technologies facilitate the playing of music and other audio on electronic devices. Id. ¶ 2.

On August 10, 2016, a Magistrate Judge held a hearing on Dell's Motion to Compel Responses to Interrogatories, Doc. 152, and Dell's Motion to Compel the Deposition of Gerardus

---

[1] The procedural history recited here is limited to the filings related to the instant Motions, Docs. 223, 233.

1

Lokhoff, Doc. 199. Doc. 220. The Magistrate Judge GRANTED Dell's Motion to Compel Responses and DENIED Dell's Motion to Compel Lokhoff's deposition. Id. at 2. Prior to the hearing, Plaintiffs brought the "in camera matter" of disqualification to the Court's attention, and the Magistrate Judge ORDERED the Parties "to determine promptly whether they intend to present the matter to the Court." Id. at 3.

On August 17, 2016, Plaintiffs filed the Motion for Protective Order, Doc. 223, and Andrew Ward's accompanying Declaration in support, Doc. 225. The Motion for Protective Order concerns the deposition of Aleks Mehrle ("Mr. Mehrle") scheduled for August 24, 2016. Doc. 223 at 1. On August 17, 2016, Plaintiffs and Third Party Defendant filed a Motion to Expedite the Consideration of the Motion for Protective Order. Doc. 226. On August 18, 2016, Dell filed an Opposition to Plaintiffs' Motion to Expedite. Doc. 227. On August 18, 2016, a Magistrate Judge GRANTED Plaintiffs' and Third Party Defendant's Motion to Expedite. Doc. 228. The Order (1) required Dell to respond to the Motion for Protective Order by noon on August 22, 2016; (2) required Plaintiffs and Third Party Defendant to file any reply by noon on August 23, 2016; and (3) prohibited Mr. Mehrle's August 24, 2016 deposition from going forward until the Motion for Protective Order was resolved or the deposition could be "taken by counsel not implicated by any potential disqualification issue." Id. at 1. On August 18, 2016, Plaintiffs and Third Party Defendant replied in support of their Motion to Expedite. Doc. 229.

On August 22, 2016, Dell filed an Opposition to the Motion for Protective Order. Doc. 230. On August 22, 2016, Plaintiffs replied in support of their Motion for Protective Order. Doc. 231. On August 22, 2016, Plaintiffs filed the Motion to Disqualify W&S, Doc. 233, and Garrard R. Beeney's Declaration in support, Doc. 235. On August 22, 2016, Plaintiffs filed a Motion to Stay Discovery Pending the Court's Resolution of Their Motion to Disqualify W&S.

Doc. 236. On August 22, 2016, Plaintiffs filed a Motion to Expedite Briefing and Consideration of the Motion to Disqualify, Doc. 233, and a Motion to Stay Discovery, Doc. 236. Doc. 238. On August 23, 2016, Dell filed an Opposition to Plaintiffs' Motion to Expedite. Doc. 239. On August 23, 2016, a Magistrate Judge GRANTED the Motion to Expedite, Doc. 238. Doc. 240. The Order required (1) Dell to respond to the Motion to Disqualify by August 31, 2016; (2) Plaintiffs and Third Party Defendant to reply by September 2, 2016; (3) Dell to respond to the Motion to Stay Discovery by August 25, 2016; and (4) Plaintiffs and Third Party Defendant to file their reply by August 26, 2016. Id. at 1. On August 23, 2016, Plaintiffs replied in support of their Motion to Expedite, Doc. 238. Doc. 241.

On August 25, 2016, Dell opposed Plaintiffs' Motion to Stay. Doc. 242. On August 26, 2016, Plaintiffs replied in support of their Motion to Stay. Doc. 243. On August 26, 2016, a Magistrate Judge GRANTED Plaintiffs' Motion to Stay "until the resolution of plaintiffs' motion to disqualify Winston & Strawn LLP, or until further order of this Court." Doc. 244 at 1. On August 31, 2016, Dell filed an Opposition to the Motion to Disqualify, Doc. 256, and filed Kathleen B. Barry's Declaration in support, Doc. 261. On September 2, 2016, Plaintiffs replied in support of the Motion to Disqualify, Doc. 263, and filed Garrard Beeney's Declaration in support, Doc. 264. On September 6, 2016, Dell filed a Notice of Supplemental Authority. Doc. 265.

A Markman hearing was scheduled for November 17, 2016, the final pretrial conference was scheduled for January 5, 2017, and the trial was scheduled for January 17, 2017. See Doc. 88. On September 7, 2016, the Court heard oral argument on the pending Motions and **GRANTED** the Motion to Disqualify, Doc. 233. Doc. 268.

## II. LEGAL STANDARDS

3

A. **Virginia Rules of Professional Conduct 1.9 and 1.10**

This Court has adopted the Virginia Rules of Professional Conduct. See Local Civ. R. 83.1(I); id. app. Fed. R. Disciplinary Enf't R. IV(B); see In re Morrissey, 305 F.3d 211, 224 (4th Cir. 2002). Rule 1.9 states in pertinent part,

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

Va. R. Prof'l Conduct 1.9(a).[2] Rule 1.10 governs the actions of a conflicted lawyer's firm:

> (a) While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e).
> . . . .
> (c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

Va. R. Prof'l Conduct 1.10. These Rules indicate the need for disqualification if

> (1) the moving party and opposing counsel had a prior attorney-client relationship, (2) the interests of the opposing counsel's present client are adverse to the movant, (3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving party, and (4) the moving party does not consent.

Touchcom, Inc. v. Bereskin & Parr, 299 Fed. App'x 953, 954 (Fed. Cir. 2008) (applying Virginia law to a disqualification issue).

In 1992, the Virginia State Bar's ethical Council considered a case in which a firm representing medical malpractice plaintiffs sought to hire an attorney employed at a firm representing medical malpractice defendants. Va. State Bar Legal Ethics Op. 1428 (Feb. 22, 1992) ("Va. LEO 1428"). The attorney participated in the defense firm's cases against the

---

[2] It is important that "the analysis begins on the proper analytical footing." Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., 727 F. Supp. 2d 469, 474 (E.D. Va. 2010). Plaintiffs seek to disqualify the attorney in question (and, consequently, W&S) under Rule 1.9(a) because of his previous representation of Plaintiffs, not his former firm's representation of Plaintiffs. Doc. 234 at 4. If Plaintiffs objected to the attorney's knowing confidential information because of his former firm's work, their Motion would hinge instead on Rule 1.9(b). See id.

4

plaintiff's firm, and the cases continued after the attorney accepted the plaintiff's firm's offer. Id. "[T]he Committee opined that, absent the consent of the attorney's former client (the defendant in the medical malpractice cases) after full disclosure, it would be improper for the attorney to personally represent the plaintiff and similarly improper for his new firm to continue to represent the plaintiff." Id. The impropriety exists if "the plaintiff's firm currently represented the adverse party or was subsequently contacted by the adverse party on a specific matter on which the attorney/new hire had previously worked." Id. Screening the attorney from the litigation at the new firm would not cure the impropriety, but if the attorney "had not worked on the matter while at his former firm and . . . did not possess any secrets or confidences of the former client which could be used to the disadvantage of the former client or to the advantage of the new client," the firm could continue the representation. Id.

### B. The Court's Duty and Discretion

#### i. *The Court's Duty to Maintain the Integrity of the Bar*

The Fourth Circuit has cautioned against the "mechanical and didactic application" of conflict rules, Aetna Cas. & Sur. Co. v. United States, 570 F.2d 1197, 1202 (4th Cir. 1978) (quoting Int'l Elecs. Corp. v. Flanzer, 527 F. 2d 1288, 1293 (2d Cir. 1975)), or "weigh[ing] the circumstances with hair-splitting nicety," United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977) (internal quotation marks omitted). However, because courts have a "duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar," Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc., 727 F. Supp. 2d 469, 472 (E.D. Va. 2010), the Fourth Circuit has emphasized that ethical rules governing disqualification of counsel are to be applied "with a view of preventing the appearance of impropriety." Clarkson, 567 F.2d at 273 n.3 (internal quotation marks omitted). This Court has likewise

5

explained that it has a

> non-delegable responsibility . . . to see that lawyers practicing before this Court maintain the highest standards of professional conduct in the management of cases before it, and to insure that nothing, not even the appearance of impropriety, is permitted to tarnish the judicial process or shake the confidence of the public in the integrity of the legal profession.

In re Asbestos Cases, 514 F. Supp. 914, 919–20 (E.D. Va. 1981). Therefore, though disqualification is a "drastic step," Shaffer v. Farm Fresh, Inc., 966 F.2d 142, 146 (4th Cir. 1992), trial courts are "to resolve all doubts in favor of disqualification," Clarkson, 567 F.2d at 273 n.3.

Some courts have stringently applied Rule 1.10(a) to 1.9(a) conflicts. E.g., Sunbeam, 727 F. Supp. 2d at 473–74 ("[T]he inescapable impact of Rule 1.10(a) is that a firm cannot represent a client in litigation if any member of the firm previously has represented any party directly adverse to that client in the litigation."); Touchcom, Inc., 299 Fed. App'x at 954 ("Rule 1.9(a) requires disqualification if four criteria are met . . . ."). Other courts have emphasized the trial court's discretion in disqualifying attorneys and firms. United States v. Dancy, No. 3:08cr189, 2008 WL 2901682, at *3 (E.D. Va. July 23, 2008) ("Trial courts are afforded broad discretion in making disqualification determinations."), rev'd on other grounds, 2008 WL 4329414 (E.D. Va. Sept. 16, 2008); LifeNet, Inc. v. Musculoskeletal Transplant Found., No. 3:06cv387, 2007 WL 1169191, at *1 (E.D. Va. Apr. 19, 2007) ("Initially, this Court must determine whether a conflict exists, and if so, whether the drastic remedy of disqualification is warranted."); Sharp v. Sharp, No. 02-74, 2006 WL 3088067, at *13 n.21 (Va. Cir. Ct. Oct. 26, 2006) (noting the "growing hesitance" to per se disqualify and adopting the "weighing of the equities approach that focuses on the presence of a breach sufficient to 'taint' the underlying proceeding"); see also Wheat v. United States, 486 U.S. 153, 157–58, 164 (1988) (acknowledging trial courts' discretion in disqualifying counsel in criminal cases); United States v. Williams, 81 F.3d 1321, 1324 (4th Cir.

1996) (citing Wheat's acknowledgement of the court's requisite "broad discretion to rule without fear" on criminal disqualification motions); United States v. Franklin, 177 F. Supp. 2d 459, 466 ("The Court will . . . examine the facts of this case in light of what the disciplinary rules require but its analysis will not end there."). The comments to Rule 1.9 also caution against the automatic application of imputation and disqualification: "If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel." Va. R. Prof'l Conduct 1.9 cmts. 4, 4b. Instead, the comments recommend a "functional analysis." Id. Therefore, when exercising its discretion to disqualify, a court should examine the following principles.

  *ii. A Party's Right to Choose Its Counsel and the Resulting Confidential Relationship*

  First, a court should consider the fundamental principle of a party's right to choose its counsel. Shaffer, 966 F.2d at 146. However, this right is secondary to the court's duty to maintain the integrity of the bar. Wheat, 486 U.S. at 166 (Marshall, J., dissenting) ("When a defendant's selection of counsel, under the particular facts and circumstances of a case, gravely imperils the prospect of a fair trial, a trial court may justifiably refuse to accede to the choice."); Sunbeam, 727 F. Supp. 2d at 472. Both temporal and financial burdens are also imposed each time a party is forced to substitute counsel during a case. See LifeNet, 2007 WL 1169191, at *1. Consequently, disqualification must be based on more than "mere speculation" that an attorney might jeopardize his client's interests. Shaffer, 966 F.2d at 145.

  Second, a court should consider the pivotal confidential relationship between a party and its attorney. "It is well settled that once an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the

prior matter." Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 731 (E.D. Va. 1990); see Sunbeam, 727 F. Supp. 2d at 473 (quoting Tessier, 731 F. Supp. at 730).[3]

### iii. Substantial Relation of Prior and Current Cases

Third, the court should satisfy itself that the potentially conflicted attorney's relevant cases are "substantially related." See Sunbeam, 727 F. Supp. 2d at 472. The cases must share "more than a superficial relationship;" they must "involve[ ] common factual and legal issues and shared common evidence." In re Riles, No. 620, 2000 WL 1062086, at *3 (Fed. Cir. July 20, 2000) (unpublished opinion). Cases are substantially related when "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second." Tessier, 731 F. Supp. at 730 (quoting Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263, 1266 (7th Cir. 1983)). Even if an attorney bills "'only a short period of time [it] does not preclude [his] work from being substantially related to the present litigation.'" Buckley v. Airshield Corp., 908 F. Supp. 299, 305 (D. Md. 1995) (quoting Elan Transdermal Ltd. v. Cygnus Therapeutic Sys., 809 F. Supp. 1383, 1388 (N.D. Cal. 1992)) (alteration in original).

Assessing substantial relation in intellectual property cases requires "fact-bound evaluations of the degree of risk perceived by the court that a former client's secrets will be revealed or used in a later action." Sunbeam, 727 F. Supp. 2d at 473. Some district courts in this Circuit finding substantial relation between patent cases have not required "that two lawsuits involve the same operative facts, so long as there is a sufficient similarity of issue." Id. (citing Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 514, 518 (M.D.N.C. 1996) (quoting

---

[3] Dell's citation of Arista Records LLC v. Lime Grp. LLC, No. 06cv5936, 2011 WL 672254, at *1 (S.D.N.Y. Feb. 22, 2011), is inapplicable here. See Doc. 230 at 9. While the Southern District of New York applied a rebuttable presumption that confidential information was shared in an attorney's prior representation, the Eastern District of Virginia has instead "embraced" an irrebuttable presumption that an attorney and client share confidential information during representation. Sunbeam, 727 F. Supp. 2d at 475; Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 731 (E.D. Va. 1990).

Buckley, 908 F. Supp. at 304)). But cf. M-CAM, Inc. v. D'Agostino, No. 3:05cv6, 2005 WL 2413109, at *4–5 (W.D. Va. Oct. 18, 2005) (holding that a case involving trade secret content and a later case involving its alleged misappropriation were not substantially related).

In Tessier, the former firm argued that the previous litigation "involved different time frames, different causes of action, different legal theories, and different parties," but the Court found that the former case was substantially related to the latter case and disqualified an attorney and his firm. 731 F. Supp. at 731. Though the legal theories were "substantively different, the cases [did] arise from substantially similar facts," a circumstance that created the risk that confidential information would pass from the former firm to the new adverse client. Id.

In Sunbeam, this Court considered the disqualification of a patent attorney who had previously represented defendant Homeland. 727 F. Supp. 2d at 471. The attorney's time sheets from the prior litigation indicated that he had drafted a complaint for Homeland alleging infringement of its patents, conducted a pre-filing investigation of the accused product, written a cease-and-desist letter to the infringing company, examined Homeland's products "to determine scope of coverage," and analyzed prior art, "some of which [was] being pressed by Homeland in th[e latter] case as part of its invalidity defense." Id. Though the attorney performed no work in the latter case, the Court disqualified him and his firm because his "involve[ment] in patent prosecution work for the accused product," analysis of prior art, "non-infringement analysis as part of the process," and "unrestricted access" to Homeland's files at his former firm demonstrated a substantial relationship between the cases and posed a great risk of impropriety. Id. at 475.

*iv.  Disqualification as a Tactic*

Finally, courts should acknowledge the reality that litigants abuse the disqualification rule

9

for tactical reasons. See Richardson-Merrell, Inc. v. Koller, 472 U.S. 424, 424–25 (1985); Personalized Mass Media Corp. v. Weather Channel, Inc., 899 F. Supp. 239, 242 (E.D. Va. 1995). "When a motion to disqualify appears to have been made primarily for strategic purposes or would provide the movant with an undue tactical advantage, courts 'have been extremely reluctant to disqualify attorneys.'" Alexander v. Primerica Holdings, Inc., 822 F. Supp. 1099, 1118–19 (D.N.J. 1993) (quoting Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co., 632 F. Supp. 418, 431 (D. Del. 1986)).

### III. PARTIES' ARGUMENTS

#### A. Plaintiffs' Arguments

Plaintiffs alleged that until 2015, Finnegan, Henderson, Farabow, Garret & Dunner, LLP ("Finnegan") represented Plaintiffs in suits related to the MPEG Standards at issue here. Doc. 224 at 2. In particular, the attorney in question was a Finnegan partner until 2013 and spent 186.7 hours from October 2009 to June 2010 representing Plaintiffs as "the first-listed Finnegan attorney in Audio MPEG v. Palm." Id.[4] The attorney worked on "litigation asserting the [three Patents at issue here] and re-examination of two of them." Id. According to Plaintiffs, Palm involved "the same plaintiffs assert[ing] the same Patents on the same primary theory [as here]." Id. The attorney in question "engaged in strategic discussions with Plaintiffs concerning the litigation and defenses to Palm's counterclaims, including those asserted under the Sherman Act, and was privy to Plaintiffs' confidential information, strategy and approach to litigating the Patents and defending their validity." Doc. 234 at 3. On August 1, 2016, Plaintiffs learned that the attorney in question is now a partner at W&S, which represents Dell. Doc. 224 at 1. He

---

[4] The closed docket for Audio MPEG, Inc. et al. v. Palm, Inc. lists a different attorney as the only Finnegan attorney representing Defendants in the case. No. 1:09cv1413 (E.D. Va. June 8, 2010). However, the Complaint filed in the Palm case indicates that the attorney in question here and three other Finnegan attorneys signed the Complaint filed on December 24, 2009. Doc. 235, Ex. K at 9.

works in W&S's Washington, D.C. office, where "at least one Winston & Strawn associate currently representing Dell works." Doc. 234 at 10 & n.6.[5]

From 2008 to 2010, the United States Patent and Trademark Office ("USPTO") reexamined two of Plaintiffs' Patents (Nos. 5,323,396 and 5,777,992). Id. at 5–6. The attorney in question represented Plaintiffs in responding to the USPTO's inquiries and successfully argued for the validity of the two Patents. Id. at 6. He "studied the Patents and the relevant prior art;" "strategized" about "overcom[ing] cited prior art," licensing, and litigation; and "conferred [with Plaintiffs] about the impact of the USPTO ruling." Id.; Doc. 224 at 3. "[He] argued on behalf of Plaintiffs . . . that the WAN prior art reference did not invalidate the Patents. His current firm argues precisely the opposite." Doc. 234 at 24 n.15.

Plaintiffs claimed that during the Palm litigation, Plaintiffs "shared confidential and privileged information" with the attorney in question. Id. at 6. In the Palm litigation, Palm "asserted defenses including patent invalidity, laches and estoppel, and exhaustion," as Dell has here. Id. Comparing the Palm counterclaim and Dell's current counterclaim, Plaintiffs indicated that "[m]uch of the language of Dell's antitrust counterclaim allegations here is taken verbatim from Palm's counterclaim," and both Dell and Palm "alleged that Plaintiffs 'have engaged in a widespread anticompetitive scheme designed to extract supra-competitive licensing fees from [Dell/Palm] (and others), and ultimately to harm competition and consumers with higher prices . . . .'" Docs. 224 at 2–3 (alteration in original), 234 at 6. Dell has also "asserted a 'licensed defense' based on a Microsoft license, an issue the attorney in question considered on behalf of Plaintiffs in connection with the Palm litigation." Doc. 234 at 8. His billing entries for

---

[5] Plaintiffs also learned that another partner at W&S's Washington, D.C. office "represented Plaintiffs in another litigation substantially related to this one" while she was a partner at the Howrey LLP firm. Doc. 234 at 10. After learning of the potential conflict on August 18, 2016, Plaintiffs investigated and found only that she had "signed the SanDisk complaint for Plaintiffs." Id. at 15, 20 n.11; Doc. 263 at 2 n.2. Therefore, the Motion to Disqualify focuses on the attorney in question. Doc. 234 at 15.

11

Plaintiffs in the Palm case included studying "patents, infringement issues, claim construction issues, and Palm contentions." Doc. 224 at 3. "[He] also advised Plaintiffs with respect to overcoming prior art in re-examinations of two of the Patents—issues that are identical or very similar to issues raised by Dell's invalidity defense in this case." Id. Plaintiffs argued that the striking similarities in the Palm and current case pleadings are due to his work for Plaintiffs on the Palm litigation and as Dell's counsel here. See Doc. 234 at 6.

Plaintiffs argued that Virginia Rules 1.9(a) and 1.10 are directly on point, and "[the attorney in question], who represented Plaintiffs on nearly identical matters, cannot represent Dell in this case[,]" nor can "W&S . . . ethically represent Dell without Plaintiffs' consent (which W&S has not sought and Plaintiffs have not given)." Id. at 4.

Plaintiffs informed W&S of the potential conflict on August 3, 2016. Id. at 11. Dell's lead counsel responded that W&S was unaware of the potential conflict and "stated that no information regarding this action or the Palm litigation had been shared between [the attorney in question] and any lawyer 'at Winston & Strawn' representing Dell." Id. (quoting id., Ex. F.) Dell's lead counsel also noted that the attorney's work on the Palm litigation—which was deleted from the highlights of his website biography once Plaintiffs informed W&S of the potential conflict, id. at 9 n.5; Beeney Decl. ¶ 8—was not included in W&S's conflict check because the representation had ended more than three years before he joined W&S. Doc. 234 at 11. Dell reported to Plaintiffs that the attorney "vaguely recalls" the Palm litigation and "does not recall working on any counterclaims" or "performing any affirmative work" on the USPTO reexaminations. Id. at 12. W&S notified Plaintiffs on August 15, 2016 that Dell retained Alston & Bird LLP for "'professional responsibility advice.'" Id. (quoting Beeney Decl. ¶ 16).

When Plaintiffs raised the disqualification issue during the August 10, 2016 hearing

before a Magistrate Judge, he agreed that "certainly this is a serious issue" and urged the Parties to determine whether they would formally raise the issue with the Court. Doc. 234 at 13 (quoting Hearing Tr. at 87:6–7, Aug. 10, 2016). Plaintiffs "consult[ed] with a Virginia-based expert in legal ethics" and decided that the Motion to Disqualify, though it is "extreme" and "may result in some delay of this litigation, a result against their own interests," was necessary. Id. at 15–16, 28, 13 n.10.

## B. Dell's Arguments

Dell argued that Plaintiffs could have filed the Motion to Disqualify "weeks or perhaps months" before they actually did, and the delay signaled the conflict was not as dire as portrayed. Doc. 230 at 2. Rather, Dell asserted, Plaintiffs filed the instant Motions to harass Defendants. Id. at 9. Plaintiffs claimed that they discovered the conflict on August 1, 2016, Doc. 224 at 1, but Dell noted that Plaintiffs did not act on the issue until they sent an in camera letter to a Magistrate Judge on August 9, 2016 and unsuccessfully sought to "unilaterally postpone" the August 10, 2016 hearing on Plaintiffs' "deficient interrogatory responses." Doc. 230 at 6. Additionally, "Dell noticed Mr. Mehrle's deposition for August 24, 2016[, but] Plaintiffs did not object to the Notice, even though by their own admission they were aware of the supposed conflict of interest . . . ." Id. at 7. Plaintiffs did not file the Motion for Protective Order until August 17, 2016, id. at 8; see Doc. 223, or the Motion to Disqualify until August 22, 2016, Doc. 233. Citing Plaintiffs' "continuous refusal to comply with their discovery obligations," Dell argued that the Motion for Protective Order was a dilatory litigation tactic aimed at keeping Dell from retrieving discovery materials while Plaintiffs continued to "deny[ ] Dell the discovery it needs to defend itself (while demanding intense discovery from Dell) . . . ." Doc. 230 at 2.

Dell claimed that since the alleged discovery of the conflict, W&S "took the matter

13

seriously, investigated the circumstances thoroughly" and responded that "withdrawal and/or disqualification was inappropriate and unnecessary." Id. at 6, Ex. 10. Nevertheless, Plaintiffs "refused to serve" W&S with documents, "insisted that [W&S] not defend Dell witnesses at depositions," and "instructed third-party respondents to Dell's subpoenas to not cooperate or communicate" with W&S. Id. at 4–5.

Dell noted that it previously moved for a protective order in this case when Plaintiffs "sought to hire a recent expert witness retained by Dell" who "no doubt" learned W&S and Dell's litigation strategies in a previous case concerning "the same accused products . . . sold over the same time period." Id. at 5. A Magistrate Judge denied Dell's motion because "the former expert's engagement for Dell concluded more than four years ago, and any confidential or privileged information disclosed to him is not sufficiently relevant to the instant litigation to require the unusual remedy of disqualification." Doc. 197 at 1. Dell considered Plaintiffs' Motion for Protective Order to be similar. See Doc. 230 at 5.

Dell argued that Plaintiffs' Motion for Protective Order was meritless because the attorney in question (1) did not remember the work he did on the Palm case, (2) had not represented Dell or otherwise worked on the current case, (3) had not represented any of the Plaintiffs since joining W&S, (4) had not communicated about the Palm case with anyone at W&S who represents Dell in the current case, and (5) would not communicate about the Palm case because W&S erected an ethical wall. Id. at 8.

### IV. ANALYSIS

A. **A Conflict Exists Under Rule 1.9(a).**

i. *The attorney in question and Plaintiffs had a prior attorney-client relationship.*

Plaintiffs established that while the attorney in question was a Finnegan partner, he

14

represented Plaintiffs in both the <u>Palm</u> litigation and in the USPTO's reexamination proceedings. Docs. 224 at 2, 234 at 5–6. Dell agreed that the attorney worked on the <u>Palm</u> case while at Finnegan in 2009, but stated that he has no documents relating to the representation and "does not recall much, if anything, about the case." Doc. 230 at 8, Ex. 10 at 1. Dell also agreed that he at least "consult[ed] on the patent reexaminations" but does not remember "performing any affirmative work on them." <u>Id.</u>, Ex. 10 at 1. Therefore, the Parties did not dispute that the attorney and Plaintiffs had a prior attorney-client relationship, and an irrebuttable presumption arose that he shared confidential information with Plaintiffs during that litigation. See <u>Tessier</u>, 731 F. Supp. at 731.

### ii. *Dell's interests are adverse to Plaintiffs' interests.*

As opposing Parties in this case, Plaintiffs and Dell have opposing interests. <u>See Sunbeam</u>, 727 F. Supp. 2d at 474 ("And Sunbeam could not, of course, argue that its interests are not adverse to [Defendant] Homeland's."); <u>Tessier</u>, 731 F. Supp. at 730 n.5 (skipping analysis of opposing interests because the plaintiff was indisputably the conflicted firm's former client).

### iii. *The issues raised here are substantially related to the <u>Palm</u> and USPTO reexamination issues.*

Plaintiffs have shown that the issues raised here are substantially related to the <u>Palm</u> and USPTO reexamination issues on which the attorney in question worked. First, the <u>Palm</u> case in which he signed the complaint and developed litigation strategy concerned the same Patents and similar infringement claims asserted here. Docs. 224 at 2, 234 at 6. Dell's duplication of portions of the <u>Palm</u> antitrust counterclaim indicates that even Dell recognizes the similarity of the issues. Docs. 224 at 3, 234 at 6. Second, the attorney's successful representation of Plaintiffs in the USPTO's reexamination of these Patents required the evaluation of prior art and Plaintiffs' ability to overcome it and retain the Patents. Doc. 224 at 3. Dell has also asserted an

invalidity defense on the same grounds as the reexamination. Id. The alleged infringement of the same Patents at issue in Palm and assertion of the same claims and counterclaims here demonstrate that the attorney's former representation of Plaintiffs encompassed "the same operative facts" and "sufficient similarity of issue" as this litigation. See Sunbeam, 727 F. Supp. 2d at 473. It does not matter if he recalls little about his representation of Plaintiffs and retains no electronic or physical documents from the representation, see Doc. 230, Ex. 10 at 1; he acquired confidential information about Plaintiffs' litigation strategy and, to some extent, even helped craft it during the USPTO reexaminations, Docs. 234 at 6, 224 at 3. A risk therefore exists that Plaintiff or an independent objective observer would not be persuaded that no impropriety occurred, and even scrupulous refrainment from the present case cannot cure the attorney's conflict. See Va. LEO 1428.

Though the attorney in question has not made an appearance in this case, he "could have"—and did—"obtain[ ] confidential information in the first representation that [is] relevant" here. Tessier, 731 F. Supp. at 730–31. Indeed, the surety that he received confidential information from Plaintiffs, id. at 731, weighs heavily in favor of W&S being disqualified even though he is not working on this case. See Va. R. Prof'l Conduct 1.10(a); Va. LEO 1428. Moreover, the attorney possesses confidential information which could harm Plaintiffs if used by one of the W&S attorneys who has appeared in this case and works in his office. Doc. 234 at 10 & n.6.

Finally, though Dell argued that Plaintiffs impermissibly delayed in filing the Motions, Doc. 230 at 2, "there are no specific rules governing [disqualification] challenges based on timeliness," Buckley, 908 F. Supp. at 308. A court can find that a party waived its right to object if the "former client was concededly aware of the former attorney's representation of an

adversary but failed to raise an objection promptly when [it] had the opportunity." Id. (quoting Alexander, 822 F. Supp. at 1115). Plaintiffs did not waive their right to object to the attorney's representation of Dell because they filed the Motion for Protective Order and Motion to Disqualify within three (3) weeks of discovering their necessity. Doc. 224 at 1; see Doc. 223. Plaintiffs even raised the issue in camera with a Magistrate Judge within ten (10) days of learning of the conflict in an effort to resolve the issue without filing the Motions. See Doc. 220 at 3. Plaintiff argued that it appreciated the gravity of the Motions and filed them only after weighing the issues and communicating with Dell and its retained conflict counsel. Doc. 234 at 29–30. Therefore, no impermissible delay occurred.

    *iv.* *Plaintiffs did not consent to the attorney's representation of Dell.*

Plaintiffs did not consent to the attorney's representation of Dell, nor did Dell seek it to alleviate the conflict. Id. at 4. As was evident from the Motion to Disqualify, Plaintiffs were unable and unwilling to consent to the attorney's or W&S's representation of Dell. See id. at 29–30.

    *v.* *Conclusion*

The Court therefore **FOUND** that a conflict existed under Rule 1.9(a).

**B.**    **The Court's Duty and Discretion Require Disqualification.**

The Court's foremost concern is its duty to "safeguard the integrity of the judicial process...protect[ ] clients' confidences... [and] foster public confidence in the ethics of the Court and the bar." Sunbeam, 727 F. Supp. 2d at 475; see Clarkson, 567 F.2d at 273 n.3. The current configuration of counsel presents an inescapable appearance of impropriety. Even if Plaintiffs consented to W&S's representation of Dell and the actual conflict were waived, "the appearance of impropriety would remain." See United States v. Scott, 980 F. Supp. 165, 169 n.5

(E.D. Va. 1997). Thus, this Court's duty to preserve the integrity of the bar and its exercise of discretion would still require the disqualification of W&S. See Wheat, 486 U.S. at 163 (discussing the court's "substantial latitude in refusing waivers of conflicts of interest"). Moreover, the Virginia Rules aim to foster the protection of client confidences and attorney loyalty, and the appearance of conflict present here jeopardizes both. Sharp, 2006 WL 3088067, at *26.

The Plaintiff itself is justifiably uneasy about the potential breach of its confidences. See Tessier, 731 F. Supp. at 731. The attorney in question worked for 186.7 hours on its Palm patent infringement claims and in representing it before the patent office. He now works in partnership with other W&S attorneys who represent Dell in this substantially similar case. For over seventeen (17) months during the pendency of this proceeding, the attorney's biographic pages on the W&S website listed his representation of Audio MPEG, Inc. in the 2009 timeframe as one of the major accomplishments of his career. Anderson Decl., Ex. 1 at 2 ("Counseled . . . Audio MPEG . . . on successful re-examinations confirming validity of patents covering standards being litigated against Kodak, Samsung, Palm and Apple."). How could the plaintiff or an impartial and objective outside observer ignore such a patent appearance of impropriety? See In re Asbestos Cases, 514 F. Supp. at 919–20. The attorney in question testified that he did not remember seeing the names "Audio MPEG, Inc.," "U.S. Philips Corporation," "Orange SA," "TDF SAS," and "Institut Für Rundfunktechnik GmBh" appear on the firm conflict list and further stated he may not have recognized the names had he seen them. He filed an affidavit to the same general proposition. W&S filed affidavits denying any exchange of information between the attorney in question and any of the lawyers in its office who have been involved in the case, and there is no evidence to contradict this. Accordingly, the Court **FINDS** there is no

18

evidence to suggest that there has been an improper exchange of privileged information.

However, such a factual finding does not outweigh the appearance of impropriety created by the presence of the attorney in question as a partner at W&S, the extent of his involvement with the same issues at bar on behalf of the Plaintiff, as well as his recitation of his successful representation of the Plaintiff on the W&S website.

The growth of multi-jurisdictional practice by law firms coupled with the increased mobility of practicing attorneys places added pressure upon law firms to deal with the issues raised in these Motions. However, the traditional and well founded concept of the appearance of impropriety cannot yield to the added expense and inconvenience inherent in the enforcement of longstanding ethical concepts. Judges themselves must not only avoid the appearance of impropriety but also instruct juries to do the same. No less should be expected of the attorneys who practice before the bar of this Court. Accordingly, Dell's right to choose its counsel must yield to the Court's discretion to disqualify W&S. Wheat, 486 U.S. at 166 (Marshall, J., dissenting); Sunbeam, 727 F. Supp. 2d at 472.

Finally, the Court **FINDS** that Plaintiffs did not file the instant Motions as a dilatory litigation tactic. Doc. 234 at 29–30. Not only did Plaintiffs weigh the legal justifications for their Motions and file them soon after discovery of the conflict, but Plaintiffs acknowledged that they too will suffer some of the negative effects of rescheduling the remaining discovery and trial dates. See id. As a result of the appearance of impropriety and in exercising its discretion to protect the integrity of its Court and of the bar, the Court **FINDS** that disqualification is compelled. In so ruling the Court does not believe it finds in favor of Plaintiff and against Defendant. Instead, it **FINDS** in favor of protecting the integrity and hopefully the appearance of the integrity of this Court as well as the bar which practices before it.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTED** the Motion to Disqualify, Doc. 233, and further **DENIES** the Motion for Protective Order, Doc. 223, as **MOOT**. Winston & Strawn LLP is **ORDERED** disqualified from representing Dell effective upon the hearing date of September 7, 2016. The difficulties inherent in substituting counsel at this stage of the proceeding compel the Court to postpone all scheduled discovery deadlines for not less than thirty-four (34) or more than sixty (60) days and postpone the scheduled trial date until March 28, 2017.

The Clerk is **REQUESTED** to deliver electronically a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
October 25, 2016