AUDIO MPEG, INC., et al.,

        Plaintiffs/
        Counterclaim
        Defendants,

and

SOCIETÁ ITALIANA PER LO SVILUPPO
DELL'ELETTRONICA S.P.A.,

        Third-Party
        Defendant,

v.
                                  Civil No. 2:15cv73
                                  (Lead Case)
                                  Civil No. 2:16cv82
                                  (Consolidated Case)

DELL INC.,

        Defendant /
        Counterclaimant /
        Third-Party Plaintiff.

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss Dell's Counterclaims I-X and Strike Dell's Seventh Affirmative Defense, ECF No. 248, and, in the alternative, a Motion for a Separate Trial and Stay of Dell's Counterclaims I-X and Patent Misuse Affirmative Defense,[1] ECF No. 253, both of which were

---

[1] The Court notes that Counter-Defendants' request to stay discovery on Dell's counterclaims is moot because discovery is already complete in this case.

jointly filed by Audio MPEG, Inc. ("Audio MPEG"), U.S. Philips Corporation ("Philips"), TDF SAS ("TDF"), Institute für Rundfunktechnik GmbH ("IRT") (collectively, "Plaintiffs"), and Counterclaim Defendant Societá Italiana per lo Sviluppo dell'Elettronica S.p.A. ("SISVEL") (collectively with Plaintiffs, "Counter-Defendants").[2] For the reasons set forth below, the Court **GRANTS** the Motion for a Separate Trial, **DISMISSES as MOOT** the Motion to Stay the counterclaims and patent misuse defense, and **TAKES UNDER ADVISEMENT** the Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This patent infringement action arises out of alleged infringement by Defendant Dell Inc. ("Defendant" or "Dell"), of the following audio technology patents: United States Patent No. 5,323,396 ("the '396 patent"), United States Patent No. 5,777,992 ("the '992 patent"), and United States Patent No. 5,539,829 ("the '829 patent") (collectively, the "asserted patents"). Compl. ¶¶ 19-46. Through compression of audio files

---

See Status Conf. Tr. 39, ECF No. 616 (notifying the Court that discovery is closed and the case is ready for trial).

[2] Dell alleged antitrust counterclaims against the patent owners and Audio MPEG, who were the original Plaintiffs in this case, and additionally joined SISVEL, the parent company of Audio MPEG, as a third-party defendant. Countercl. ¶¶ 28, 44. According to Dell, SISVEL administers the MPEG patent pool, with SISVEL alone having "responsibility for licensing non-U.S. Patents in the patent pool and SISVEL's wholly-owned subsidiary, Audio MPEG, ha[ving] sole responsibility for licensing U.S. Patents." Id. ¶ 44.

2

using MPEG Standards[3] to encode and decode digital audio signals, the patented technologies facilitate the playing of music and other audio on electronic devices. Id. ¶¶ 2, 22.

According to the complaint, plaintiffs Philips, TDF, and IRT ("Patent Owners"), own the asserted patents, id. ¶ 24, and plaintiff Audio MPEG has the exclusive right in the United States to license, sue, and collect fees, costs, and damages relating to infringement of the asserted patents on behalf of all Plaintiffs, id. ¶ 41. Since 1996, the Patent Owners have offered a "joint license" on all of the Patent Owners' MPEG audio patents, including the asserted patents, prior to their expiration. Id. ¶ 42. The '396 patent and the '992 patent expired on June 21, 2011, id. ¶¶ 6, 30, and the '829 patent expired on July 23, 2013, id. ¶ 36.

On February 20, 2015, Plaintiffs filed a three-count complaint in the Norfolk Division of this Court alleging that Hewlett-Packard Company ("HP") infringed the asserted patents. See generally HP Compl., ECF No. 1. On December 21, 2015, Plaintiffs filed a three-count complaint against Dell in the Alexandria Division of this Court alleging that Dell infringed the asserted patents. Compl., Audio MPEG, Inc., et al. v. Dell, Inc., No. 1:15cv1674 (E.D. Va. 2015). On February 22, 2016, the

---

[3] MPEG Standards are worldwide industry standards for audio compression set by the MPEG/Audio Working Group of the International Organization for Standardization ("IOS"). Compl. ¶ 20.

3

Alexandria Division transferred the Dell case to the Norfolk Division to be consolidated with the HP case. No. 2:15cv73, ECF No. 73. On May 16, 2016, Plaintiffs and HP settled, leaving Dell as the sole remaining defendant in the case. Hr'g Tr. 3:22-4:16, ECF No. 136.

Plaintiffs allege that Dell directly infringed claims in the asserted patents by "manufacturing, using, selling, importing, and/or offering for sale products that include capabilities required by the MPEG standards, including, but not limited to[,] Dell computers and electronic devices containing Cyberlink PowerDVD (such as Latitude D530, Latitude D630, Latitude D830, and Dell Precision M6300) or Roxio Creator (such as Latitude D630)." Compl. ¶¶ 51, 60, 69. Plaintiffs also allege that Dell indirectly infringed claims in the asserted patents by inducing and contributing to infringement by others. Id. ¶¶ 52-53, 61-62, 70-71. Plaintiffs further allege that Dell continued its infringing activities even after Audio MPEG informed Dell, no later than July 1, 2004, that "all Defendant's products incorporating the MPEG Audio encoding and decoding capabilities required by at least one of the MPEG standards are covered by [the asserted patents]." Id. ¶¶ 52, 61, 70.

Dell denies that the patents were "duly and legally issued," Answer ¶¶ 47, 56, 65, ECF No. 184, arguing that the patents are invalid because the inventors failed to satisfy the

4

conditions of patentability specified in 35 U.S.C. § 100, *et seq.*, Aff. Defenses ¶ 1, ECF No. 184. Further, Dell denies that it has directly or indirectly infringed on the patents. Answer ¶¶ 51-53, 60-62, 69-71. Dell asserts defenses of prosecution history estoppel; exhaustion; license; waiver, laches,[4] and/or estoppel; patent misuse; prosecution laches; and argues for a limit on any damages. Aff. Defenses ¶¶ 2-22.

In a Counterclaim against Counter-Defendants, Dell asserts violations of the Sherman Act, civil conspiracy under Virginia state law, common law conspiracy, breach of contract, promissory estoppel, waiver, and prosecution laches (collectively, the "antitrust claims"). Countercl. ¶¶ 152-224. Arguing both federal antitrust law and Virginia state law, Dell alleges that Counter-Defendants are direct competitors with each other but have illegally pooled their patents together (the "SISVEL patent pool"), which improperly restrains trade and creates a monopoly. Id. ¶¶ 152-187, 196-203. According to Dell, Counter-Defendants illegally pooled their patents together by including expired and unrelated patents in the SISVEL patent pool and not varying or reducing the licensing fee as patents within the pool expired, and by not competing against each other in the marketplace due

---

[4] On March 21, 2017, in <u>SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC</u>, No. 15-927, the United States Supreme Court held that the equitable defense of laches "cannot be interposed as a defense against damages where the infringement occurred within the period prescribed by [statute]." 137 S. Ct. 954, 967 (2017).

5

to their patent pool arrangement. Id. ¶¶ 131-147, 169-172. Dell argues that Counter-Defendants specifically conspired to injure Dell through license agreements with "Co-Conspirator A" and "Co-Conspirator B," respectively, which required "Counter-Defendants to license the SISVEL patent pool to Dell or sue Dell for infringement." Id. ¶¶ 159, 189-195.

In addition to improperly pooling their patents, Dell argues that, because MPEG was adopted as an international standard, Counter-Defendants were obligated to offer patent licenses on fair, reasonable, and nondiscriminatory terms ("FRAND terms"), but failed to do so. Id. ¶¶ 204-209. According to Dell, Counter-Defendants are charging a "supra-competitive" license fee for the patent pool, in violation of federal and state law. Id. ¶¶ 145-149. Dell asserts that it has "suffered substantial injury to its business and property as a result of the Counter-Defendants' unlawful conduct," id. ¶ 144, and asserts that Counter-Defendants' conduct "has caused, and will continue to cause, substantial anticompetitive effects to competition generally, and specifically to competition in the United States," id. ¶ 179.

On August 26, 2016, Counter-Defendants filed a Motion to Dismiss Dell's Counterclaims I-X and Strike Dell's Seventh Affirmative Defense (patent misuse defense), ECF No. 248, and filed an alternative Motion for a Separate Trial and Stay of

6

Defendant's Counterclaims I-X and Patent Misuse Affirmative Defense, ECF No. 253. On October 24, 2016, Dell filed a response to Counter-Defendants' Motion to Dismiss, ECF No. 308, and a response to the Motion for Separate Trial, ECF No. 206. On November 4, 2016, Counter-Defendants filed a reply brief in support of their Motion to Dismiss, ECF No. 334, and a reply brief in support of the Motion for a Separate Trial, ECF No. 329. The case was then reassigned to this Judge on March 20, 2017. In a telephonic status conference with the parties on April 24, 2017, the Court reviewed the case status with the parties and explained that it would rule on the motion to bifurcate and would consult with the co-assigned Magistrate Judge regarding the motions in limine. Status Conf. Tr. 65-66, ECF No. 616. The Court recommended that, after receiving its bifurcation ruling, the parties may wish to consider returning to settlement discussions. Id. Having been fully briefed and considered by this Court, Counter-Defendants' Motion to Dismiss and Motion for a Separate Trial are now ripe for review.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(b), "the court may order a separate trial" of counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize. . . ." Fed. R. Civ. P. 42(b). As an initial matter, the Court must determine which circuit law controls application of Rule 42(b) to the

7

combined patent infringement and antitrust claims in this case. While there is little discussion of this question in the case law, it appears that the Court should look to precedent from the United States Court of Appeals for the Federal Circuit to determine "[w]hether and under what sets of facts patent issues should be separated for trial," because, while a procedural matter, it "implicat[es] the jurisprudential responsibilities of [the Federal Circuit] in the field of patent law." In re Innotron Diagnostics, 800 F.2d 1077, 1084 (Fed. Cir. 1986). Therefore, the Court primarily will look to Federal Circuit precedent in deciding whether to bifurcate trial of the patent infringement claims from the antitrust claims.

Because a trial court "has broad discretion with regard to trial management," a decision to bifurcate a trial is reviewed for an abuse of discretion. Shum v. Intel Corp., 499 F.3d 1272, 1276 (Fed. Cir. 2007) (citing Danjaq v. Sony, 263 F.3d 942, 961-62 (9th Cir. 2001)). "In the context of patent cases, '[e]xperienced judges use bifurcation and trifurcation both to simplify the issues in patent cases and to maintain manageability of the volume and complexity of the evidence presented to a jury.'" Enzo Life Scis., Inc. v. Digene Corp., No. CIV.A. 02-212-JJF, 2003 WL 21402512, at *5 (D. Del. 2003) (quoting Thomas L. Creel & Robert P. Taylor, Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice, 424

PLI/PAT 823, 826 (1995)). However, the Court's discretion is not without limits. For example, "[w]hen deciding whether issues should be separately tried, trial courts must ensure that a litigant's constitutional right to a jury is preserved." Shum, 499 F.3d at 1276. In examining the factors of convenience, prejudice, and judicial economy under Rule 42(b), the United States Court of Appeals for the Federal Circuit has stated that "the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." In re Innotron Diagnostics, 800 F.2d at 1084 (citing 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2388 (1971)).

## A. Bifurcation of Antitrust Counterclaims

When applying this principle to cases with patent claims and antitrust counterclaims, district courts frequently bifurcate the issues for trial. See id. at 1084-85; In re Theodor Groz & Sohne, 972 F.2d 1352, 1992 WL 188908, at *2 (Fed. Cir. 1992) (table decision) (stating that Innotron recognized that "district courts may generally favor the separation of patent and antitrust issues for trial").[5] However,

---

[5] Dell disputes this assertion from Federal Circuit dictum regarding the way courts "generally" handle cases with patent claims and antitrust counterclaims, arguing that bifurcation is the exception, not the rule. Def.'s Resp. Br. 8, ECF No. 306 (citations omitted). Whether bifurcation under such circumstances is the way courts "generally" proceed, or is the exception, is immaterial to the analysis here as this Court exercises its discretion on the facts of this case, rather than applying a rule of

9

district courts are not required to bifurcate patent claims and antitrust claims, and retain "considerable discretion in determining whether the severance of antitrust and patent issues would best serve the convenience of the parties, avoid prejudice, and minimize expense and delay." In re Theodor Groz & Sohne, 1992 WL 188908, at *2 (citing Innotron, 800 F.2d at 1084). Courts have synthesized these bifurcation considerations in the patent/antitrust context and specifically considered "whether bifurcation will conserve judicial resources, improve the jury's comprehension of the issues, and avoid prejudice." Ricoh Co. v. Katun Corp., No. CIV.A. 03-2612 WHW, 2005 WL 6965048, at *1 (D.N.J. 2005) (citing Union Carbide Corp. v. Montell N.V., 28 F. Supp. 2d 833, 837 (S.D.N.Y. 1998)); see also In re Theodor Groz & Sohne, 1992 WL 188908, at *2 (noting that district courts may consider the "commonality of the patent and antitrust issues presented" and whether the issues presented make bifurcation "unworkable and [an] inefficient use of judicial resources").

## B. Bifurcation of Patent Misuse Defense

When a defendant asserts a patent misuse defense along with antitrust counterclaims, courts have utilized bifurcation to manage the litigation. See, e.g., W.L. Gore & Assocs., Inc. v.

---

generality or exception. See In re Hamilton, 82 F.3d 432 (Fed. Cir. 1996) (table decision) (refusing to issue a writ of mandamus to a district court to bifurcate the patent and antitrust claims for trial).

Int'l Med. Prosthetics Research Assocs., Inc., 975 F.2d 858, 860 (Fed. Cir. 1992) (noting that the district court bifurcated a patent misuse defense together with the antitrust counterclaim); Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 863 (Fed. Cir. 1997) (noting that the lower court bifurcated the trial into a standard "infringement" trial, in which the patent infringement claims were tried, and an "antitrust" trial, in which both the patent misuse defense and antitrust counterclaim were tried). Trial courts that have utilized bifurcation to manage such litigation have noted that "when considering the orderly presentation of evidence the patent misuse defense is more appropriately tried along with the antitrust issues." Va. Panel Corp. v. Mac Panel Co., 887 F. Supp. 880, 884 (W.D. Va. 1995) (explaining that the patent misuse defense may include demonstrating "expansion of patent monopoly rights over unpatented devices").

### III. DISCUSSION

As an alternative to their pending Motion to Dismiss, Counter-Defendants request that the Court bifurcate Dell's counterclaims I-X and patent misuse affirmative defense so that they may be tried separately from Plaintiffs' patent infringement claims. The Court will first consider bifurcation of Dell's counterclaims I-X, and then will evaluate bifurcation of Dell's patent misuse defense.

## A. Bifurcation of Dell's Counterclaims I-X

### 1. Convenience and Judicial Economy

The Court first evaluates whether bifurcation would conserve judicial resources and be more convenient for the parties, witnesses, and the Court. Counter-Defendants argue that bifurcation is in "the interest of judicial economy, because Dell's counterclaims and infringement defenses raise unrelated issues that will require different evidence." Pls.' Reply Br. 5. Dell argues that the evidence regarding the "patent issues" and Dell's antitrust counterclaims overlaps, and therefore it would be more convenient and expedient to hear the patent infringement and antitrust counterclaims in a single trial. Def.'s Resp. Br. 13-14. According to Dell, "[i]f the Court orders separate trials, all of these fact and expert witnesses will be required to testify twice, and two separate juries will be required to evaluate their credibility and the weight to be given to their testimony." Id. at 14.

In assessing the factors of convenience and judicial economy, the Court considers whether there is a "possibility that a [completed] trial on [the plaintiffs'] patent claims will simplify some of [the defendant's] antitrust counterclaims" in a later trial. Masimo Corp. v. Philips Elecs. N. Am. Corp., No. CIV.A 09-80-JJF-MPT, 2010 WL 925864, at *2 (D. Del. 2010); see also Otsuka Pharm. Co. v. Apotex Corp., 143 F. Supp. 3d 188, 197

12

(D.N.J. 2015) (noting that when resolution of a patent infringement issue might moot a counterclaim, it is in the interest of judicial economy to bifurcate the trial); Dentsply Int'l Inc. v. New Tech. Co., No. CIV.A. 96-272 MMS, 1996 WL 756766, at *4 (D. Del. 1996) ("Separate trials may be warranted so long as some of the issues in a second trial would be simplified, . . . all of the issues in a second trial need not be implicated in the first." (citing Akzona, Inc. v. E.I. Du Pont de Nemours & Co., 607 F. Supp. 227, 232 (D. Del 1984))).

Here, Dell's antitrust claims are much greater in scope than Plaintiffs' patent infringement claims because the antitrust claims (1) include all of the patents in the SISVEL pool instead of only the three patents-in-suit, (2) include a large number of licensees instead of a single licensee (Dell), (3) cover a worldwide market, and (4) include ten unique claims based upon federal and state law.[6]  See generally Countercl. Therefore, while there may be some overlap of witnesses with knowledge about both the patent infringement claims and the antitrust claims, Dell's counterclaim appears to require substantial new and additional evidence beyond the evidence regarding the patent infringement claims, thus militating against any efficiency interest in hearing all of the claims

---

[6] Counter-Defendants did not request the Court to bifurcate Count XI of Dell's counterclaim.

13

together in a single trial.  See Components, Inc. v. W. Elec. Co., 318 F. Supp. 959, 966 (D. Me. 1970) (collecting cases) ("Pursuant to Rule 42(b) the courts have frequently found it to be in the interest of economy and convenience, both to the court and to the parties, and in furtherance of the most expeditious disposition of complex litigation of this kind, to sever the antitrust and misuse issues from the issues of [patent] validity and infringement.").  Moreover, resolution of the patent infringement claims could resolve one or more of the antitrust claims because several of Dell's counterclaims are listed as alternative arguments depending on the resolution of the patent infringement claims.[7]  If the patents are found to be invalid, not infringed, or unenforceable, Dell's counterclaim Count VIII (Breach of RAND Obligations), Count IX (Promissory Estoppel), and Count X (Waiver) would all be moot.  Thus, the Court finds that the factors of judicial economy and convenience weigh in favor of bifurcating the patent infringement claims from the antitrust claims.

---

[7] See Countercl. ¶ 208 (Count VIII: "In the event that the Asserted Patents are found valid, infringed, and enforceable, Counter-Defendants have failed to comply with their RAND obligations."); ¶ 213 (Count IX: "In the event that the Asserted Patents are found valid, infringed, and enforceable, Dell has been damaged as a result of its reasonable reliance and Counter-Defendants' failure to offer a license to the Asserted Patents on reasonable and non-discriminatory terms and conditions."); ¶ 217 (Count X: "In the event that the Asserted Patents are found valid, infringed, and enforceable, Dell has been damaged as a result of its reasonable reliance and Counter-Defendants' waiver of its [sic] rights to seek licensing fees beyond those fees that are reasonable and non-discriminatory.").

## 2. Jury Confusion

Next, Counter-Defendants argue that bifurcation of the patent infringement claims from the antitrust claims would "significantly reduce the risk of juror confusion." Pls.' Opening Br. 10-11 (citing Masimo Corp., 2010 WL 925864, at *2). In response, Dell argues that Counter-Defendants' concerns are only "generalized concerns about juror confusion," which cannot justify separate trials. Def.'s Resp. Br. 16. Moreover, according to Dell, at most, concerns about juror confusion would only justify separate trials, not a stay of discovery on Dell's antitrust claims. Id. at 16 n.6.

In the interest of a just disposition of the litigation, the Court must consider whether bifurcation would "improve the jury's comprehension of the issues." Ricoh Co., 2005 WL 6965048, at *1. "[N]either convenience nor economy is the ultimate objective [of bifurcation]: '[A] paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto.'" LoCicero v. Humble Oil & Ref. Co., 52 F.R.D. 28, 29 (E.D. La. 1971) (citing Baker v. Waterman, 11 F.R.D. 440, 441 (S.D.N.Y. 1951)). Thus, in deciding whether to bifurcate, "the major consideration is directed toward the choice most likely to

15

result in a just final disposition of the litigation." In re
Innotron, 800 F.2d at 1084.

Here, Counter-Defendants raise more than a "generalized"
concern over juror confusion. See Def.'s Resp. Br. 16. Both
the patents-in-suit and "patent cases in general, involve
matters of fact and issues of law that are not as intuitive to
the average reasonable juror as more common actions, such as
actions for personal injury or breach of contract, would be."
Ricoh Co., 2005 WL 6965048, at *1. Unlike the case cited by
Dell, Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 622 (N.D. Ill.
2000), which involved a single patent, one claim, one allegedly
infringing product, and no counterclaim, the instant patent
infringement claims involve three patents with detailed
technological questions related to software programing, multiple
allegedly infringing products, and ten antitrust claims
involving both Federal and state law claims, and numerous
additional patents, see generally Compl.; see generally
Countercl.; see also Masimo Corp., 2010 WL 925864, at *2
("Explanation and presentation of the existence and relevance of
these non-asserted patents to the jury would only further
complicate trial and inevitably lead to juror confusion."). 
Thus, while in Real, the court found "no compelling reason to
conduct separate trials" on the issues of liability and damages,
Real, 195 F.R.D. at 622, the instant case involves complex

16

issues that, if tried together, would likely create jury confusion, see Status Conf. Tr. 38-39 (notifying the Court that, as of the telephonic status conference on April 24, 2017, Counter-Defendants' exhibit list was "something north of 6,000 exhibits," and Dell's exhibit list was "in the range of 800 to 850 documents"); Ricoh Co., 2005 WL 6965048, at *1 ("[T]o add antitrust issues to patent issues would pose a difficult task for even the most astute of juries."). The Court concludes that the interest of juror comprehension weighs in favor of bifurcating the trial because bifurcation of the antitrust claims and patent infringement claims "will surely enhance jury decision making in two ways: (1) by presenting the evidence in a manner that is easier for the jurors to understand, and (2) by limiting the number of legal issues the jury must address at any particular time." Ricoh Co., 2005 WL 6965048, at *1; Otsuka Pharm. Co., 143 F. Supp. 3d at 197 ("Bifurcation of [the antitrust and patent misuse] Counterclaims from the already-complex patent infringement claims further enhances 'the parties' right to jury trial by making the issues the jury must consider less complex.'" (quoting Warner Lambert Co. v. Purepac Pharm. Co., Nos. 98-2749, 99-5948, 00-2053, 2000 WL 34213890, *11 (D.N.J. 2000))).

### 3. Prejudice

Finally, the parties both assert that they will experience prejudice if the Court does not proceed as they respectively request. Counter-Defendants argue that a single trial will prejudice them by the jury hearing the allegations that Counter-Defendants have engaged in anticompetitive behavior while the jury is evaluating Plaintiffs' patent infringement claims. Pls.' Opening Br. 10-11. Dell's counterclaims include allegations of Counter-Defendants' behavior in the "worldwide market" for MP2 and MP3 technology, with "[l]icensors, licensees, and consumers of such technology . . . located throughout the world." Countercl. ¶ 106-107. In this worldwide context, with Counter-Defendants' vast number of licensees and consumers, Dell's allegations include that Counter-Defendants have engaged in anticompetitive conspiracies, improper market monopolization, and "have breached the promises they made to the MP3 Standard body." Id. ¶¶ 98, 121, 131. In response, Dell argues that bifurcation would prejudice it because bifurcation would delay resolution of Dell's counterclaims. Def.'s Resp. Br. 15-16.

Under Federal Rule of Civil Procedure 42(b), a court may bifurcate a trial "to avoid prejudice." Fed. R. Civ. P. 42(b). "The inevitable effect of the introduction of . . . highly prejudicial evidence [is] to deny [the opposing party] the fair

trial to which it was entitled." See Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1445 (4th Cir. 1993) (holding that, in a non-patent case, it was an abuse of discretion for a district court to deny a motion to bifurcate claims when trying the claims together "expos[ed] the jury to . . . inflammatory and irrelevant evidence"). Here, Dell's allegations of anticompetitive conspiracies, improper market monopolization, and breach of promises could bias the jury against Plaintiffs when it evaluates the patent infringement claims, thus preventing a fair trial on the patent infringement claims. See Masimo Corp., 2010 WL 925864, at *2 ("[A]t trial, [the defendant's] allegations of monopolization could bias the jury when it evaluates [the plaintiffs'] patent claims.").

The Court next considers Dell's argument that bifurcation would cause it prejudice by delaying resolution of its antitrust claims. As Counter-Defendants allege, and Dell does not dispute, Dell waited twelve years (from the time that Audio MPEG first requested that Dell license the asserted patents) to bring the instant antitrust claims against Counter-Defendants. Def.'s Resp. Br. 15. Such delay in bringing suit weighs against Dell's argument that it would suffer prejudice without the swift resolution of its counterclaims. Moreover, it does not appear that Dell is faced with any ongoing anticompetitive conduct by Counter-Defendants, such that damages would be mitigated by an

earlier trial date, because all of the patents in the SISVEL patent pool will have expired before trial will commence, regardless of whether the trial is bifurcated. Countercl. ¶ 77 ("[T]he last expiration date of any patent in the SISVEL Patent Pool . . . expires on July 2, 2017."). Thus, the Court finds that Dell will not be unduly prejudiced by any minimal delay resulting from bifurcation.

Having considered the factors above and finding that each factor weighs in favor of bifurcation, the Court **GRANTS** Counter-Defendants' Motion for a Separate Trial of Dell's Counterclaims I-X from trial of Plaintiffs' patent infringement claims.

### B. Bifurcation of Dell's Patent Misuse Defense

Counter-Defendants also request that the Court bifurcate Dell's patent misuse defense from Plaintiffs' patent infringement claims because this defense is "more appropriately tried along with the antitrust issues." Pls.' Opening Br. 8 (citing Va. Panel Corp., 887 F. Supp. at 884). In its seventh defense, patent misuse, Dell alleges that Counter-Defendants "have sought to illegally extend the patent life of the patents that Plaintiffs claim are essential by tying these claimed essential patents . . . , which expired in 2010 and 2011, with patents that are not claimed to be essential and are set to expire years later, resulting in an anticompetitive requirement for licensees to pay royalties for licenses relating to patents

20

past their expiration." Answer ¶ 15. Dell further alleges that Counter-Defendants "have also sought to enforce the Asserted Patents beyond their original and proper scope by means of improper application of industry standards." Id. ¶ 16.

"Patent misuse is an equitable defense to patent infringement," which prevents a patentee "from using the 'patent's leverage' to 'extend the monopoly of his patent to derive a benefit not attributable to the use of the patent's teachings,' such as requiring a licensee to pay a royalty on products that do not use the teaching of the patent." U.S. Philips Corp. v. Int'l Trade Comm'n, 424 F.3d 1179, 1184 (Fed. Cir. 2005) (citing Zenith Radio Corp. v. Hazeltine Res., Inc., 395 U.S. 100, 135-36 (1969)). In determining if a patentee has misused its patent, the "key inquiry" is whether "the patentee has impermissibly broadened the physical or temporal scope of the patent grant and has done so in a manner that has anticompetitive effects." Sanofi-Aventis v. Apotex Inc., 659 F.3d 1171, 1182 (Fed. Cir. 2011). Due to the focus on anticompetitive behavior, "the doctrine of patent misuse closely tracks antitrust law principles in many respects." U.S. Philips Corp., 424 F.3d at 1185-86.

The Court finds that it is appropriate to bifurcate Dell's patent misuse defense along with Dell's antitrust claims because of the significant overlap in alleged facts and legal arguments.

In its patent misuse defense, Dell argues that Counter-Defendants are attempting to "illegally extend the patent life of the patents . . . by tying" the essential asserted patents with non-essential patents in a patent pool. Answer ¶ 15. In Dell's Counterclaim, Count III (Tying), Dell alleges that Counter-Defendants have violated federal antitrust law because Counter-Defendants "have tied the license of technology that . . . is essential to the practice of MP2 Decoding Technology and MP3 Decoding Technology, with patents that are not essential to the practice" of these technologies. Countercl. ¶169. Both Dell's patent misuse defense and antitrust counterclaim Count III (Tying), allege very similar facts and legal argument. Thus, because of the legal and factual overlap between Dell's patent misuse defense and antitrust counterclaim Count III, the Court **GRANTS** Counter-Defendants' request to bifurcate Dell's patent misuse defense so that it can be heard along with the antitrust counterclaims. See Va. Panel Corp., 887 F. Supp. at 884 ("[W]hen considering the orderly presentation of evidence the patent misuse defense is more appropriately tried along with the antitrust issues.").

## IV. CONCLUSION

Having evaluated the relevant factors and finding that each factor weighs in favor of bifurcation, the Court **GRANTS** Counter-Defendants' Motion for a Separate Trial of Dell's Counterclaims

I-X and Patent Misuse Defense from trial of Plaintiffs' patent infringement claims. ECF No. 253; see Ricoh Co., 2005 WL 6965048, at *1 ("The Court has broad discretion in deciding whether to separate issues and claims for trial, in accordance with its broad power to manage its trial calendar."). The Court **DISMISSES as MOOT** Counter-Defendants' Motion to Stay discovery because discovery on both the patent infringement and antitrust claims is already complete. See Status Conf. Tr. 39. The Court **TAKES UNDER ADVISEMENT** Counter-Defendants' Motion to Dismiss Dell's Counterclaims I-X and Strike Dell's Seventh Affirmative Defense (patent misuse defense). ECF No. 248. Finally, while the Court appreciates the challenges for the parties resulting from continuance of their trial date, because the Court's docket was filled with many other trials already scheduled before this case was transferred to the undersigned Judge, the Court **SETS trial** on Plaintiffs' patent infringement claims to begin on **December 5, 2017**, and in the interest of judicial efficiency, the Court **DIRECTS** the parties to file all pretrial motions **before July 31, 2017**.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to counsel for Counter-Defendants and to counsel for Dell.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 31 , 2017