

FILED

OCT - 6 2017

CLERK, US DISTRICT COURT
NORFOLK. VA

AUDIO MPEG, INC., et al.,

        Plaintiffs,

v.

        Civil Action No. 2:15cv73
        (lead case)
        Civil Action No. 2:16cv82
        (consolidated case)

DELL, INC.,

        Defendant.

## OPINION AND ORDER

This case is before the Court on defendant Dell Inc.'s ("Dell"), motion to preclude plaintiffs Audio MPEG, Inc. ("Audio MPEG"), U.S. Philips Corporation, Orange SA, TDF SAS, Institut Fur Rundfunktechnik GmBh, and counterclaim defendant Societa Italiana per lo Sviluppo deli'Elettronica S.p.A. ("Sisvel") (collectively, "plaintiffs") from offering argument, evidence, or testimony referencing the large number of licenses, over 1,000, that plaintiffs entered into with third parties prior to this litigation. ECF No. 438 (Mot. #1 of Dell's Omnibus Mot. *In Limine*); *see also* ECF Nos. 442, 464, 512. Following oral argument held July 24, 2017, the Court directed the parties to file supplemental memoranda. Order at 1, 3, ECF No. 657. The parties filed the supplemental memoranda in August 2017, ECF Nos. 711, 779, 820, and the Court heard further oral argument on September 8, 2017. Garrard R. Beeney, Esq., Matthew J. Porpora, Esq., Marc De Leeuw, Esq., and Stephen E. Noona, Esq., represented plaintiffs. John Thorne, Esq., Derek T. Ho, Esq., Benjamin J. Gottesman, Esq., and Charles B. Molster, III, Esq., represented Dell. The court reporter was Paul McManus. For the following reasons, Dell's motion *in limine* is **GRANTED IN PART AND DENIED IN PART.**

# I.  FACTUAL AND PROCEDURAL BACKGROUND

In their complaint, plaintiffs assert that "[t]o date, more than 1,000 manufacturers and sellers of MPEG Audio-enabled products have taken the license offered by [plaintiffs]."  Compl. ¶ 43, ECF No. 1 (Case No. 2:16cv82).  The International Organization for Standardization ("ISO"), through a working group, chose the patent owners' technology as the basis for the audio compression standard, which the complaint alleges was finalized in 1991 into two standards known as the MPEG Standards.  Compl. ¶¶ 20–23.  In a letter to the ISO in 1992, the patent owners agreed to "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  ECF No. 465-1.  In his supplemental expert report, plaintiffs' damages expert, John C. Jarosz, outlines plaintiffs' licensing program for the technology related to the MPEG Standards, which was initially carried out by the patent owners and later by Audio MPEG and Sisvel.  Suppl. Expert Report of John C. Jarosz, Dec. 28, 2016 ("Mr. Jarosz Suppl. Rpt.") at 34–44, ECF No. 556-2.[1]

Mr. Jarosz analyzed the evolution of plaintiffs' licensing program and a representative sample of licenses negotiated over the life of the program, including licenses negotiated by the patent owners, as well as by Audio MPEG and Sisvel.  *Id.* at 33–44, Tabs 13, 15.  Mr. Jarosz

---

[1] From 1990 to 1996, the patent owners administered the licensing program, negotiating licenses related to the patents-in-suit and related patents.  Mr. Jarosz Suppl. Rpt at 34–35.  In 1996, the patent owners granted Sisvel "exclusive rights to administer a joint licensing program for their patents and patent applications." *Id.* at 6.  The patent owners later granted Audio MPEG the exclusive rights to administer the joint licensing program.  *Id.*  In 2002, Audio MPEG granted Sisvel the substantive rights to all non-U.S. patents and patent applications owned by the patent owners related to the MPEG Standards.  *Id.* at 7.

noted that █████████████████████████████████████████████," explaining:



*Id.* at 34, *see also id.* at 38–39. In consideration for the license, third-parties agreed to pay royalties, and most of the agreements contained the "████████████████████" consisting of "██████████████████████████████████████."[2]   *Id.* at 35, *see also id.* at 39–40.

█████████████████████████████████████████████████████████

████████:

*Id.* at 35.[3]

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

[2] The agreements, whether negotiated by the patent owners or by Audio MPEG and Sisvel, generally contained ███████████████████████████████████████████████████████████████. Mr. Jarosz Suppl. Rpt. at 37–38, 44.

[3] Mr. Jarosz notes that ███████████████████████████████████████████████████████████████████████████. Mr. Jarosz Suppl. Rpt. at 35–37.



*Id.* at 38–40. 



*Id.* at 40–41. " 

." *Id.* at 42.

*Id.* at 43.

Mr. Jarosz calculated damages based, in part, on his review of the licensing program, the representative licenses, and the total number of licenses negotiated. *Id.* at 2–4. Dell's motion *in limine* seeks to preclude argument, evidence, or testimony referencing the large number of third-party licenses.

Plaintiffs' Rule 26(a)(3) disclosures contained over 3,500 exhibits that relate to the 1,000 plus licenses. Dell's Omnibus Mot. *In Limine* and Mem. in Support ("Def.'s Mot.") at 2, ECF No. 442; Pls.' Mem. in Opp. to Dell's Omnibus Mot. *In Limine* ("Pls.' Mem. in Opp.") at 8 n.3, ECF No. 464. Plaintiffs, however, disclaim any intent to offer all 3,500 license exhibits, and they initially proposed to offer some lesser number of licenses and a compilation exhibit, a one-half inch thick document, instead of the 3,500 exhibits. July 24, 2017, Hearing Transcript ("Jul. 24, 2017 Hrg. Tr.") at 91, ECF No. 656.

At the July 24, 2017 hearing, the Court asked counsel to file supplemental briefs addressing: (1) "whether it's possible to use a significantly smaller subset of licenses regarding the issues of what's a reasonable royalty . . . or on the validity issue;" and (2) "what plaintiffs need or desire in terms of evidence of commercial success as that relates to validity and whether some kind of limited evidence or a stipulation would suffice to address this issue." Jul. 24, 2017 Hrg. Tr. at 98–100.

In response, plaintiffs proposed not to seek to "introduce any compilation of licenses" if: (a) plaintiffs' witnesses were allowed to testify "(i) to the number of licenses plaintiffs have entered on the patents-in-suit (and the date range of those licenses), (ii) to the revenues generated from those licenses, and (iii) that every other major computer manufacturer has taken a license," (b) some sample of licenses were admitted, and (c) plaintiffs' witnesses "could testify about a comparably small number of specific licenses (*e.g.*, Mr. Jarosz could testify about specific licenses he analyzed)." Aug. 1, 2017 Email from Pls.' Counsel to Def.'s Counsel, ECF No. 710-1 at 3.

Dell countered with an offer to introduce nine licenses entered into by Acer, Apple, Lenovo, Microsoft, and Toshiba, and "agree to stipulate to the commercial success of the asserted

patents and [] that the aggregate amount of licensing revenues attributable to the asserted patents may be introduced at trial, so long as [plaintiffs] will not introduce evidence regarding the 1000 licenses." Aug. 3, 2017 Email from Def.'s Counsel to Pls.' Counsel, ECF No. 710-1 at 2.

When asked, during the hearing on September 8, 2017, what number of actual license exhibits Dell would need to defend the case, Dell responded that "20-ish" would be a reasonable number. September 8, 2017, Hearing Transcript ("Sept. 8, 2017 Hrg. Tr.") at 81, ECF No. 854. Plaintiffs responded that "agreements with 43 licensees" would be the maximum number of actual licenses plaintiffs would need to offer. Sept. 8, 2017 Hrg. Tr. at 89–90.

## II. DISCUSSION

Dell asserts that the *number* of licenses plaintiffs negotiated with third parties is irrelevant, or of marginal relevance, to the material issues in the case, including validity and damages. Def.'s Mot. at 2–4. Next, Dell asserts that the number of third-party licenses is not relevant because plaintiffs have not established that those licenses are comparable to a hypothetical license with Dell. Dell's Opp. to Pls.' Suppl. Mem. ("Def.'s. Suppl. Mem. in Opp.") at 3, ECF No. 779. Even if the number is relevant, Dell argues the evidence of over 1,000 licenses would unfairly prejudice Dell, reverse the burden of proof, and require substantial time to address the circumstances surrounding these licenses. Def.'s Mot. at 1. According to plaintiffs, these 1,000 plus third-party licenses contain substantially identical terms and royalty schedules, and evidence of the licenses is relevant to the issues of damages, validity, willfulness, and for accurately describing the nature of plaintiffs Audio MPEG and Sisvel's business. Plaintiffs' Suppl. Mem. of Law in Opp. to Dell's Mot. *In Limine* ("Pls.' Suppl. Mem. in Opp.") at 5, 8–14, ECF No. 711. Plaintiffs state that they do not intend to introduce 1,000 plus licenses, but they should be

permitted to "introduce representative licenses and evidence showing that more than 1,000 such licenses were, in fact, taken, including by Dell's competitors." Pls.' Mem. in Opp. at 5–6.

## A. The number of licenses that plaintiffs have entered into with third parties is relevant to several issues that will be addressed at the patent infringement trial.

Federal Rule of Evidence 401 provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." The parties agree that the number of third-party licenses is not relevant to the issue of whether Dell infringed plaintiffs' patents. Def.'s Mot. at 2, Pls.' Suppl. Mem. in Opp. at 16. Dell asserts that the number of third-party licenses is irrelevant, or of marginal relevance, to the remaining issues in the case, including validity and damages. Def.'s Mot. at 2–4. Subject to the determination of comparability, which will be addressed in section II.B. below, evidence of plaintiffs' licenses with third parties, including the number of licenses, is relevant to damages, validity, willfulness, and in responding to claims that plaintiffs are litigious.

### 1. Damages

Dell claims that plaintiffs have not "offered Dell reasonable and nondiscriminatory royalty terms and rates proportionate to royalty terms and rates offered to similarly situated companies." Defendant Dell Inc.'s Answer, Affirmative Defenses, and Counterclaims ("Def.'s Affirmative Defenses") at ¶ 21, ECF No. 183. While admitting that comparable licenses are relevant to establish a reasonable royalty, Dell argues that the "number of licenses is [] irrelevant to damages." Def.'s Mot. at 3. Plaintiffs counter that the number of licenses to the patents-in-suit is important evidence showing an established royalty, and a reasonable and non-discriminatory ("RAND") price. Pls.' Suppl. Mem. in Opp. at 3–8.

If a patentee proves infringement, the patent statute specifies that they are entitled to damages "in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The reasonable royalty is determined based on a "hypothetical negotiation, occurring between the parties at the time that infringement began." *Uniloc U.S.A., Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011). If the patents are essential to a standard issued by a standard setting organization, then the hypothetical negotiation date is set prior to the adoption of the standard, in order to exclude from a royalty any value derived from the patent's relationship with the standard. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1232–34 (Fed. Cir. 2014). "Actual licenses to the patented technology are highly probative as to what constitutes a reasonable royalty for those patent rights because such actual licenses most clearly reflect the economic value of the patented technology in the marketplace." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)). The first of fifteen factors courts should consider when determining a reasonable royalty is "[t]he royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an *established* royalty." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (emphasis added).

"For a royalty to be 'established,' it 'must be paid by such a number of persons as to indicate a general acquiescence in its reasonableness by those who have occasion to use the invention.'" *Hanson v. Alpine Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983) (quoting *Rude v. Westcott*, 130 U.S. 152, 165 (1889)).

An established royalty is usually the best measure of a 'reasonable' royalty for a given use of an invention because it removes the need to guess at the terms to which the parties would hypothetically agree. When the patentee has consistently licensed others to engage in conduct comparable to the defendant's at a uniform royalty, that royalty is taken as established and indicates the terms upon which the patentee would have licensed the defendant's use of the invention.

*Monsanto Co. v. McFarling*, 488 F.3d 973, 978–79 (Fed. Cir. 2007); *see also Rude*, 130 U.S. at 165 ("[W]here there has been such a number of sales by a patentee of licenses to . . . his patents as to establish a regular price for a license, that price may be taken as a measure of damages against infringers."). Accordingly, evidence of plaintiffs' third-party licenses, including the number of such licenses, is relevant to the issue of damages as it relates to the issue of general acquiescence and an established royalty.

## 2. Validity

Dell asserts the patents-in-suit are invalid because the subject matter of the patents would have been obvious to a person of ordinary skill in the art at the time of the invention. Def.'s Affirmative Defenses ¶ 1; *see* 35 U.S.C. § 103 (patented subject matter must be "nonobvious"). "Whether a patent is invalid as obvious is ultimately a determination of law based on underlying determinations of fact," including "any relevant secondary considerations." *Geo. M. Martin Co. v. All. Machine Sys. Int'l LLC*, 618 F.3d 1294, 1300 (Fed. Cir. 2010). "Objective evidence of nonobviousness" includes "commercial success" and "licenses showing industry respect for the invention." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013)); *see also Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997) (reversing finding of obviousness based, in part, on "evidence of the rapid growth of its business and the numerous licenses granted"); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983) (finding evidence of nonobviousness in the "[r]ecognition and acceptance of

[a] patent by competitors who take licenses under it"); *Berry Bros. Corp. v. Sigmon*, 317 F.2d 700, 703–05 (4th Cir. 1963) (holding a "total of 200 licenses" is evidence of validity). Therefore, evidence of multiple, third-party licenses to the patents-in-suit, including the number of such licenses, is relevant to the issue of validity.

### 3. Willfulness

Next, plaintiffs assert that evidence of multiple licenses could be relevant to a request for enhanced damages pursuant to 35 U.S.C. § 284. Section 284 grants courts the discretion to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. The Supreme Court explained that "such punishment should generally be reserved for egregious cases typified by willful misconduct" described as "willful, wanton, malicious, [in] bad faith, deliberate, consciously wrongful, flagrant, or [] characteristic of a pirate." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932, 1934 (2016); *see Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1570 (Fed. Cir. 1996) ("First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances.").

Dell asserts that plaintiffs' license evidence is not relevant in determining willfulness because the evidence does address whether Dell engaged in willful misconduct as defined by the Supreme Court in *Halo*. Def.'s. Suppl. Mem. in Opp. at 12 (citing *Halo Elecs.*, 136 S. Ct. at 1932). Plaintiffs counter that evidence showing "each of these licensees thought it necessary to take a license to incorporate into their products the same technology Dell has incorporated into its infringing products . . . is relevant to willfulness." Pls.' Suppl. Reply Mem. of Law in Opp. to

10

Dell Inc.'s Omnibus Motion *In Limine* ("Pls.' Suppl. Reply") at 11–12, ECF No. 820.

Understandably, the parties disagree as to whether the evidence of multiple third-party licenses makes Dell's conduct willful. However, evidence of multiple third-party licenses, including the number of licenses, passes the minimal requirement for relevance established by Federal Rule of Evidence 401, in that it "has any tendency to make a fact more or less probable."

### 4. Audio MPEG/Sisvel's Business Model

Plaintiffs assert that a discussion of these licenses helps to explain "what Audio MPEG and Sisvel are, what they do, and why." Pls.' Mem. in Opp. at 11; *see also* Pls.' Suppl. Reply at 13. Plaintiffs argue that Dell will attempt to cast Audio MPEG and Sisvel as litigious. Pls.' Mem. in Opp. at 9. Plaintiffs want to introduce evidence of their successful licensing program to negate the claim that they are litigious. *Id.*

Dell asserts that plaintiffs can testify about their business model without reference to the number of licenses. Def.'s. Suppl. Mem. in Opp. at 13. The Court agrees that plaintiffs can explain who they are, what they do, and why, without referencing the number of third-party licenses they have negotiated. However, to the extent that Dell argues that plaintiffs are litigious, evidence of the number of third-party licenses would be relevant to responding to such arguments.[4]

---

[4] In the original filings, the parties referenced Dell's laches defense. Pls.' Mem. in Opp. at 9–10, Dell Inc.'s Reply Mem. at 4–5. Following the Supreme Court decision on March 21, 2017, laches is no longer a defense for infringement that occurred within the six-year limitations period prescribed by 35 U.S.C. § 286. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017). Accordingly, the Court will not address plaintiffs' argument that reference to the third party licenses is necessary to counter Dell's laches defense. *See* Pls.' Suppl. Reply at 13.

**B.    Dell's argument regarding the comparability of the third-party licenses goes to the weight of the evidence, not its admissibility.**

Dell argues that, prior to plaintiffs introducing evidence of third-party licenses, the Court must make a threshold determination of whether the licenses are comparable to the hypothetical negotiation between plaintiffs and Dell. Def.'s. Suppl. Mem. in Opp. at 4 (citing Fed. R. Evid. 104(a) ("The court must decide any preliminary questions about whether a witness is qualified, a privilege exists, or evidence is admissible.")).[5] The parties strenuously disagree regarding whether the third-party licenses plaintiffs desire to introduce are comparable to the hypothetical license plaintiffs would have negotiated with Dell. Dell asserts that some of its defenses, such as exhaustion, are not present in the majority of the 1,000 plus licenses. Dell Inc.'s Reply Mem. ("Def.'s Reply") at 5, ECF No. 512. Dell further argues that plaintiffs have "offered no evidence of the comparability of the vast majority of the 1,000 licenses they seek to put before the jury," noting that Mr. Jarosz only identified certain licenses[6] in his report and did not perform a reliable analysis of the comparability of those licenses. Def.'s. Suppl. Mem. in Opp. at 7 (citing Mr. Jarosz Supp. Rpt. at 32–33, Tabs 13, 15). Dell asserts that the introduction of third-party licenses would necessitate mini-trials for each license introduced that will likely confuse the jury and

---

[5] Dell initially argued that the introduction of licenses *to prove damages* requires a determination of whether each license introduced is comparable. Def.'s Mot. at 3–4. In its supplemental brief, Dell asserts that a comparability analysis must be undertaken before licenses can be introduced for *any* purpose. Def.'s. Suppl. Mem. in Opp. at 6–13. The cases cited by both sides address comparability in the context of proving damages. Accordingly, this is the context in which the Court will address comparability.

[6] Dell states that Mr. Jarosz identified 43 licenses. Def.'s. Suppl. Mem. in Opp. at 7. In his supplemental expert report, Mr. Jarosz identifies 79 licenses entered into with 43 licens*ees*. Tab 13 outlines 20 licenses that the patent owners entered into with 20 licensees. Mr. Jarosz Suppl. Rpt. at 142–47. Tab 15 outlines 59 licenses that Audio MPEG and Sisvel entered into with 23 licensees. Mr. Jarosz Suppl. Rpt. at 150–61.

require substantial trial time. Def.'s Mot. at 9.

Plaintiffs argue that evidence that 1,000 plus companies agreed to licenses containing a standard royalty schedule suggests the royalty is "not tied to the particular circumstances of each license but instead reflects the minimum value of the patented technology as accepted by the market in a consensual license agreement." Pls.' Mem. in Opp. at 6; *see* Rebuttal Expert Report of John C. Jarosz at 33, ECF No. 465-9 ███████████████████████████████████ ███████████████████████████████████████████████████ ██████████"). Further, Mr. Jarosz discusses that "[████████████████████████ ██████████████████████████████████████████████████ █████████████████" Mr. Jarosz Suppl. Rpt. at 53; *see also* Neal Dep. at 67:8, ECF 465-8 ("█████████████████████████████████████████████"); Mr. Jarosz Suppl. Rpt. at 52–56 ("█████████████████████████████████████ ████████████████████████████████████████████████████ ██████████"). Mr. Jarosz describes plaintiffs' licensing program in his supplemental expert report, and attaches two license agreement summaries outlining the terms of licenses with 43 licensees. Mr. Jarosz Suppl. Rpt. at 33–44, Tabs 13, 15.

When introducing third-party licenses to prove damages, plaintiffs must rely on licenses "sufficiently comparable to the hypothetical license at issue in suit," *Lucent Techns., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1325 (Fed. Cir. 2009), and "alleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics,* 694 F.3d at 79. Before admitting evidence of a third-party license, the Court must determine whether the license meets a minimum threshold of comparability, that is, whether the license is "sufficiently related to

the case at hand." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 131 S. Ct. 2238 (2011).

A comparability analysis of individual licenses is not necessary where witnesses have testified to an established licensing program covering the patents-in-suit. *See Monsanto*, 488 F.3d at 978–80 (finding Monsanto had "consistently licensed farmers to use [the patented] technology pursuant to the terms of a standard license agreement" during the relevant time period); *Pitcairn v. United States*, No. 50328, 1975 WL 21410, at *5 (Ct. Cl. Nov. 13, 1975) (finding evidence of "a comprehensive 16-year licensing program prior to" the date of the defendant's infringement); *see also Georgia-Pacific*, 318 F. Supp. at 1120 (listing factors pertinent to determining a reasonable royalty including "1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty," and "2. The rates paid by the licensee for the use of *other* patents *comparable* to the patent in suit.") (emphasis added).

Mr. Jarosz's discussion of plaintiffs' licensing terms over time suggests an established program. *See* Mr. Jarosz Suppl. Rpt. at 34–44. The program outlined is one in which the plaintiffs committed, to the ISO, to offer licenses to their patents, including the patents-in-suit, on certain terms, and a licensing program that adhered to those terms.[7] Mr. Jarosz considered licenses negotiated by the patent owners during the time period that the hypothetical negotiation with Dell would have taken place, as well as licenses negotiated by Audio MPEG and Sisvel with companies, including many of Dell's competitors. *Id.* at Tabs 13, 15. Dell's principle argument for why these third-party licenses are not comparable to the hypothetical license it would have

---

[7] █████████████████████████████████████████████████████████████████
████████████████████████████ *See* Section I.

14

negotiated with plaintiffs is that "the vast majority of the 1,000-plus licenses cover not just the three patents-in-suit, but more than a dozen other U.S. and foreign patents as to which Plaintiffs have not asserted infringement and thus cannot recover any damages in this case." Def.'s. Suppl. Mem. in Opp. at 6. As opposed to supporting Dell's argument for exclusion, this concern addresses the need for apportionment—the necessity for the jury to apportion damages to account only for the value of the patents-in-suit. *See Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1227–28 (Fed. Cir. 2014) (noting that "[p]rior licenses [] are almost never perfectly analogous to the infringement action" and "may cover more patents than are at issue in the action"). As a result, if plaintiffs can show an established licensing program, a separate comparability analysis for each license entered into pursuant to that program is not necessary and concerns regarding apportioning value to account only for the value of the patents-in-suit will be an issue for the jury.

Moreover, "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Ericsson,* 773 F.3d at 1227. The "degree of comparability" and the determination of whether plaintiffs' damages experts appropriately considered "certain variables" are "factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (citing *i4i Ltd. P'ship,* 598 F.3d at 854). There appear to be two exceptions to the general principle that the comparability of a third-party license goes to the weight it should be accorded as opposed to its admissibility: (1) licenses to patents other than the patents-in-suit, and (2) licenses entered into as a result of a settlement. The Federal Circuit has "cautioned that 'district courts performing reasonable royalty calculations [must] exercise vigilance when considering past

15

licenses to technologies *other* than the patent in suit,' and 'must account for differences in the technologies and economic circumstances of the contracting parties.'" *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (quoting *ResQNet*, 594 F.3d at 869; *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)) (emphasis in original).[8] The third-party licenses at issue in this case are generally licenses to a pool of patents that include the patents-in-suit; therefore, the first exception does not apply.

With respect to settlement agreements, "[e]ven though a patent holder's license agreements with third parties are permissible and relevant considerations in a reasonable royalty calculation, courts frequently exclude such agreements under Fed. R. Evid. 408," in part, because "such agreements are not very reliable guides for determining the value of a reasonable royalty" given the "many considerations [that] contribute to settlement agreements." *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 767 (N.D. Ill. 2010). This second exception may apply to a small number of the third-party licenses Dell is moving to exclude. Plaintiffs assert "the vast majority

---

[8] Along these lines, in his supplemental expert report, Mr. Jarosz identifies five comparability factors: "1) the technology to be shared; 2) the product or service into which the technology is incorporated; 3) the terms of the transfer (e.g., distributor license vs. manufacturing license; cross-licensing); 4) the circumstances surrounding the establishment of the technology transfer; and 5) the characteristics of the negotiating parties." Mr. Jarosz Suppl. Rpt. at 33. The cases Mr. Jarosz relies upon to derive these comparability factors, however, each involve an expert attempting to rely on licenses for patents that are not the patents-in-suit, while failing to accord proper weight to licenses for the patents-in-suit. *See LaserDynamics*, 694 F.3d at 79–81 (holding expert testimony based on licenses to patents other than the patents-in-suit "was untethered from the patented technology at issue and the many licenses thereto and, as such, was arbitrary and speculative"); *DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1021–25, n.6 (S.D. Cal. 2011) (excluding expert testimony where expert relied on non-comparable licenses to patents other than the patents-in-suit, and noting that defendant criticized the expert's failure to place weight on prior licenses to the patents-in-suit); *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690–91 (E.D. Tex. 2010) (excluding expert testimony where expert arrived at royalty rate by relying on non-comparable industry agreements while disregarding licenses involving one or more of the patents-in-suit).

of Plaintiffs' 1,000 License Agreement are not litigation settlement agreements," and "Plaintiffs have filed fewer than ten U.S. infringement actions related to the Asserted Patents." Pls.' Mem. in Opp. at 8–9. The Court agrees with Dell that those third-party licenses entered into following the filing of a lawsuit should be excluded from the total number referenced by plaintiffs and the specific licenses introduced by either party during the trial.[9]

Mr. Jarosz's report outlines an established licensing program in which the plaintiffs licensed a pool of patents, including the patents-in-suit. The report shows that the third-party licenses, at a minimum and for purposes of Rule 104(a) of the Federal Rules of Evidence, are "sufficiently related to the case at hand" to be admissible. *i4i Ltd. P'ship*, 598 F.3d at 852. Accordingly, Dell's attacks on the comparability of the 1,000 plus third-party licenses, including that the licenses cover patents other than the patents-in-suit and that Dell's circumstances differ from the third-party licensees, go to the weight to be accorded the evidence, not its admissibility.

**C.      Rule 403 concerns can be addressed without precluding plaintiffs from referencing the 1,000 plus third-party licenses.**

Dell asserts that allowing reference to 1,000 plus third-party licenses—evidence which all parties agree is not relevant to whether Dell has infringed the patents-in-suit, Def.'s Mot. at 2, Pls.' Suppl. Mem. in Opp. at 16—will prejudice Dell and "effectively reverse the burden of proof" requiring Dell to prove why its circumstances differ from the other licensees. Def.'s Mot. at 4–5.

---

[9] In a Southern District of New York case, in which the patent holder was seeking to exclude evidence of prior licenses, the court broadly applied Rule 408 to exclude seven licenses granted "after extensive business negotiations and without any commencement of litigation," reasoning that "[a]ll that is needed for Rule 408 to apply is an actual dispute, or at least an apparent difference of opinion between the parties as to the validity of a claim." *Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F. Supp. 161, 162–64 (S.D.N.Y. 1991). The court noted that "most of the letters alleging infringement were written by outside counsel for Alpex." *Id.* at 165. Such a broad application of Rule 408 is not appropriate in this case.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

In response to the Court's inquiry regarding cases that specifically addressed multiple third-party licenses, plaintiffs reference several cases in which multiple third-party licenses were either admitted or relied upon by expert witnesses. In *Monsanto Co. v. McFarling*, plaintiff's expert witness testified, without objection, in a jury trial that Monsanto had 250 licensing agreements with seed companies. No. 4:00cv84, 2005 WL 6136224, at *8 (E.D. Mo. Apr. 27, 2005) (Testimony of Expert Witness Mark Hoffman).[10] Plaintiffs cited two cases where evidence of approximately 200 licenses was introduced on the issue of validity and damages; however, both of these cases were bench trials where Rule 403 concerns were less of a factor. *See Berry Bros. Corp. v. Sigmon*, 317 F.2d 700, 703–05 (4th Cir. 1963) (finding evidence of 200 licenses issued and nearly $900,000.00 in royalties showed "widespread acceptance" and "commercial success" supporting a finding of validity); *B.F. Goodrich Co. v. Consolidated Rubber Tire Co.*, 251 F. 617, 620 (7th Cir. 1918) (considering evidence that "the patentee granted many licenses, numbering over 200, wherein a fixed royalty was disclosed" when determining a reasonable royalty). Two additional cases cited by plaintiffs involve the assessment of a reasonable royalty in copyright cases. *See Broadcast Music, Inc. v. DMX Inc.*, 683 F.3d 32, 38, 48 (2d Cir. 2012) (considering

---

[10] This testimony was admitted after the court denied defendant's motion to exclude the expert under *Daubert*, finding that defendant's criticisms went to whether the jury should credit the expert's opinion, and not whether there was a reasonable basis for his opinion. *Monsanto Co. v. McFarling*, No. 4:00cv84, 2005 WL 5950957, at * 1 (E.D. Mo. Mar. 14, 2005), *aff'd* 488 F.3d 973, 981 (Fed. Cir. 2007).

evidence of "850 direct licenses" when determining a reasonable licensing rate); *In re Application of MobiTV, Inc.*, 712 F. Supp. 2d 206, 247, 255 (S.D.N.Y. 2010) (finding evidence of "at least a hundred separate licenses" provided a "ready-made benchmark" when setting a reasonable licensing fee). Dell cited no cases in which licenses to patents-in-suit, which were not part of a settlement, were excluded based upon a finding of unfair prejudice under Federal Rule of Evidence 403.

Accordingly, the Court will not preclude the admission of evidence regarding the 1,000 plus third-party licenses; however, the Court will place certain limitations on the manner of introduction pursuant to Rule 403. These limitations should address Rule 403 concerns, including unfair prejudice, undue delay, or needlessly presenting cumulative evidence. The circumscribed evidence outlined below, along with a potential limiting instruction, will ensure that the jury will decide the question of infringement on proper grounds based on the evidence presented.

Plaintiffs' apparent listing of 3,500 exhibits related to the 1,000 plus third-party licenses raises the prospect of both a waste of the jury and the court's time and of unfair prejudice. In subsequent filings, plaintiffs indicated that they did not intend to introduce all of the licenses, but only some licenses and a one-half inch thick compilation exhibit providing key details regarding all 1,000 plus licenses. Both parties, at the prompting of the Court, have narrowed the dispute and have moved to more reasonable positions with respect to the third-party licenses, but have been unable to bridge the gap. Having found that the third-party licenses are relevant to several triable issues, and that Dell's comparability arguments go more to weight than admissibility, the Court finds that, in order to avoid unfair prejudice, undue delay, or needlessly presenting cumulative

evidence, Dell's motion *in limine* to preclude plaintiffs from offering argument, evidence, or testimony referencing plaintiffs' 1,000 plus licenses entered into with third parties prior to this litigation, ECF No. 438 (Mot. #1 of Def.'s Omnibus Mot. *In Limine*), **is GRANTED IN PART and DENIED IN PART**, as outlined below:

## III. ORDER

A.      Subject to the laying of an appropriate foundation by plaintiffs about the established nature, and evolution, of plaintiffs' licensing program, plaintiffs may offer:

        1.      evidence of licensing agreements with no more than 43 licensees, including testimony that certain other computer manufacturers have entered into such licenses;

        2.      testimonial evidence of the total revenues stemming from its licensing program (not including revenues resulting from litigation); and

        3.      testimony by two witnesses about the number of licenses entered into for the patents-in-suit (and associated pooled patents and applications) and a date range thereof (not including litigation settlements), with no compilation exhibit listing all 1,000 plus licenses.

B.      Consistent with Dell's representation to the Court about its needs, Dell, in defending the case, may offer no more than 30 license agreements.

C.      Both parties shall submit, with their proposed jury instructions, a proposed limiting instruction with respect to the testimony concerning the total number of licensing agreements and revenues resulting therefrom.

D. Plaintiffs will not mention the 1,000 plus third-party licenses or revenues stemming from the licensing program during opening statements.

The Clerk shall send a copy of this Opinion and Order to all counsel of record.

/s/
Robert J. Krask
~~United States Magistrate Judge~~
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
October 6, 2017